[No. 40374.    En Banc.    January 30, 1969.]

*In the Matter of the Application for a Writ of Habeas Corpus of* LESLIE B. RIGGINS, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*Reported in 450 P.2d 806.

Michael H. Rosen and Edmund J. Wood, for petitioner.

The Attorney General and Stephen C. Way, Assistant, for respondent.

HAMILTON, J.—This cause was consolidated for argument before this court with *In re Bailey v. Gallagher, ante* p. 260, 450 P.2d 802 (1969). We have separated the causes for opinion purposes because we deem the dispositive issues severable.

By his petition for a writ of habeas corpus, petitioner Riggins challenges the constitutionality of parole revocation procedures followed by the Board of Prison Terms and Paroles of the state of Washington. The circumstances giving rise to the petitioner's challenges are these.

On September 23, 1958, petitioner pleaded guilty to the felony of taking a motor vehicle without permission of the owner. The Superior Court for King County, Washington, deferred sentencing and granted petitioner probation. Probation was revoked on April 17, 1959, following which petitioner was sentenced to not more than 10 years and confined in the state penitentiary. He was granted parole and released from the penitentiary on December 12, 1960.

On August 4, 1962, petitioner was arrested in Seattle, Washington, and charged with robbery. He pleaded not guilty and was tried before a jury and convicted. On appeal, this court reversed the conviction holding that certain evidence introduced at the trial was inadmissible. *State v. Riggins*, 64 Wn.2d 881, 395 P.2d 85 (1964). On remand for retrial, the Prosecuting Attorney of King County moved that the robbery charges be dismissed. This motion was granted.

On November 17, 1964, the Board of Prison Terms and Paroles (hereafter referred to as the board) suspended pe-

titioner's parole on the conviction of taking a motor vehicle without the owner's permission. Petitioner was then returned to the penitentiary at Walla Walla, Washington, on November 30, 1964. On the latter date, and for the first time, petitioner was served with a formal notice of suspension and a notice that his revocation hearing would be held 2 days later. This notice stated:

By autority [sic] of RCW 9.95.120 you are being scheduled for your parole revocation hearing at the Washington State Penitentiary on Wed. the 2nd day of December, 1964 at 8:00 a.m. or as soon thereafter as the matter may be heard. Accordingly upon such hearing you will be allowed to be heard and may defend yourself, and may be represented by an attorney and you shall have the right to present evidence and witnesses in your behalf. Any expenses incurred by you in the presentation of your case, will have to be financed by sources outside the State Agencies of the State of Washington.

In order to give proper consideration to your case and any extraordinary factors concerning it, you are hereby instructed, that if you are having witnesses or being represented by an attorney, the names of such persons and a brief statement of that about which they will testify, and must be received in writing by the Superintendent of the institution at least 48 hours prior to your scheduled hearing. The Superintendent will then give this information to the Board panel who will be hearing your case.

It is also to be understood that the panel which hears your case, through the senior member of the panel may rule upon the relevancy, materialty [sic] and propriety of the evidence and testimony presented and is empowered to designate how much time shall be allowed for the presentation.

As is apparent, this written notice does not specify the conditions of petitioner's parole which he allegedly breached, nor does it purport to give him more than 2 days within which to comply with its directives if he should desire to be represented by counsel or have witnesses appear on his behalf. The record does not reveal that petitioner received any earlier formal written notice spelling out the nature of the asserted parole violations.

Pursuant to the foregoing notice the revocation hearing was held as scheduled on December 2, 1964. Petitioner was indigent, and was not represented by counsel at the hearing. Neither did he present the testimony of any witnesses. No record was made of what transpired at the hearing; however, petitioner asserts that the only evidence introduced was in the form of a written report from his parole officer, which, petitioner contends, he was not allowed to examine. Likewise, petitioner alleges he was not permitted to confront or cross-examine his parole officer concerning the matter set forth in the written report.

Following the hearing, the board revoked petitioner's parole and fixed his new minimum sentence.

So far as material, the relevant statutory provisions concerning parole and parole revocation procedures are set forth in RCW 9.95.110 and 9.95.120, which read:

The board of prison terms and paroles may permit a convicted person to leave the buildings and enclosures of the penitentiary or the reformatory on parole, after such convicted person has served the period of confinement fixed for him by the board, less time credits for good behavior and diligence in work: *Provided,* That in no case shall an inmate be credited with more than one-third of his sentence as fixed by the board.

*The board of prison terms and paroles may establish rules and regulations under which a convicted person may be allowed to leave the confines of the penitentiary or the reformatory on parole, and may return such person to the confines of the institution from which he was paroled, at its discretion.* (Italics ours.) RCW 9.95.110.

Whenever the board of prison terms and paroles or a probation and parole officer of this state has reason to believe a convicted person has breached a condition of his parole or violated the law of any state where he may then be or the rules and regulations of the board of prison terms and paroles, any probation and parole officer of this state may cause the arrest and detention of such convicted person pending a determination by the board whether the parole of such convicted person shall be revoked. All facts and circumstances surrounding the violation by such convicted person shall be reported to the board of prison terms and paroles by the probation and parole officer.

*On the basis of the report by the probation and parole officer, or at any time upon its own discretion, the board may revise or modify the conditions of parole or order the suspension of parole by the issuance of a written order bearing its seal which order shall be sufficient warrant for all peace officers to take into custody any convicted person who may be on parole* and retain such person in their custody until arrangements can be made by the board of prison terms and paroles for his return to the institution from which he was paroled. *Any such revision or modification of the conditions of parole or the order suspending parole shall be personally served upon the parolee.*

.   .   .   .

*Whenever a paroled prisoner is accused of a violation of his parole,* other than the commission of, and conviction for, a felony or misdemeanor under the laws of this state or the laws of any state where he may then be, *he shall be entitled to a fair and impartial hearing of such charges within thirty days from the time that he was returned to the institution from which he was paroled before at least two members of the parole board. Upon such hearing such paroled prisoner shall be allowed to be heard and may defend himself, and may be represented by an attorney and he shall have the right to present evidence and witnesses in his behalf.* After such hearing the board of prison terms and paroles shall make an order either (1) revoking the parole of such convicted person, or (2) reinstating the parole previously granted. In the event the parole is revoked, the board of prison terms and paroles shall make an order determining a new minimum sentence, not exceeding the maximum penalty provided by law for the crime for which he was originally convicted, or the maximum fixed by the court.

In the event that the board of prison terms and paroles suspends a parole by reason of an alleged parole violation or in the event that a parole is suspended pending the disposition of a new criminal charge, the board of prison terms and paroles shall have the power to nullify the order of suspension and reinstate the individual to parole under previous conditions or any new conditions that the board of prison terms and paroles may determine advisable. *Before the board of prison terms and paroles shall nullify an order of suspension and reinstate a parole they shall have determined that the best interests of society*

*and the individual shall best be served by such reinstatement rather than a return to a penal institution.* (Italics ours.) RCW 9.95.120.

Petitioner raises several objections to the procedures followed by the board in revoking his parole under the authority of these statutes. Because of the nature of his various contentions, we will discuss the issues raised in three parts. Ultimately, we reach the conclusion that petitioner is entitled to a new hearing for the reason that he was denied due and timely formal notice before hearing of the nature of the alleged parole violations and was thereby precluded from having the "fair and impartial hearing" provided for by RCW 9.95.120.

## I. DUE PROCESS.

Petitioner contends that when a parolee has been accused of breaching the conditions of his parole, the board must make factual determinations in order for it to answer the issues raised by such an accusation, namely: Has a condition of parole been violated; if so, should parole be revoked; and, if so, what should be the minimum sentence on reincarceration? Petitioner argues that the rights traditionally associated with due process and the rights guaranteed by the sixth amendment to the United States Constitution and the tenth amendment to the state constitution are designed to insure the reliability and efficacy of hearing procedures in fact-finding inquiries which may result in a deprivation of a person's liberty. From this premise, petitioner urges that the pertinent constitutional provisions require that a parolee accused of a parole violation has the following rights at the revocation hearing: (a) A right to counsel appointed at public expense if the parolee is indigent; (b) a right to confront and cross-examine witnesses adverse to him; (c) a right to compulsory process to obtain witnesses in his favor; (d) a right to have the hearing held at a place near where the alleged parole violations purportedly occurred; and (e) a formal record of all events occurring at the hearing.

Respondent, in response, asserts that a parolee is not at liberty in the ordinary sense but, rather, is in limited legal

custody of state administrative authorities during his parole and until the termination of his maximum sentence; that parole is a matter of leniency which can be granted on such conditions as the state chooses to impose, including the limitation or denial of traditional judicial or criminal prosecution due process requirements in the provisions made for modification or revocation of the parole; that the Sixth and Tenth Amendment rights to counsel, confrontation, and compulsory process afforded by the federal and state constitutions, respectively, apply primarily and specifically to "criminal prosecutions," and that criminal prosecutions, as such, end with the imposition and execution of final judgment and sentence; and that generalized procedural due process, as opposed to those rights afforded by the sixth and tenth amendments to our federal and state constitutions, is a flexible concept, varying with the nature of the governmental and private interests involved, and does not compel a quasi judicial or criminal proceeding in the case of parole revocation.

In considering the issues raised, the question first arises as to the effect, if any, which the decision in *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 Sup. Ct. 254 (1967), should have upon our decision in this cause. We conceive that it has no direct bearing. In *Mempa v. Rhay, supra,* the issue was whether an indigent probationer whose sentence had been *deferred* was entitled to appointed counsel at such time as the order of deferred sentence was vacated, sentence imposed, and the probationer imprisoned pursuant thereto. In that case the judicial process had not been completed at the stage of the criminal prosecution there involved. In the instant case, the judicial process was completed with the imposition of final judgment and sentence, and the commencement of its execution by petitioner's incarceration in a state correctional facility. At and from that point petitioner came under the jurisdiction of the administrative authorities legislatively empowered to administer the state's penal institutions, rather than continuing under the jurisdiction and control of the court. Therein, we perceive, lies a recognizable distinction between the *Mempa*

holding and the instant case. That such distinction has been recognized and applied in refusing to extend the rationale of *Mempa* to parole revocation proceedings is evident from the following comparatively recent federal and state decisions. *Williams v. Patterson,* 389 F.2d 374 (10th Cir. 1968); *Rose v. Haskins,* 388 F.2d 91 (6th Cir. 1968); *Holder v. United States,* 285 F. Supp. 380 (E.D. Tex. 1968); *Sammons v. United States,* 285 F. Supp. 100 (S.D. Tex. 1968); *Sorenson v. Young,* 282 F. Supp. 1009 (D. Minn. 1968); *United States v. Hartsell,* 277 F. Supp. 993 (E.D. Tenn. 1967); *People v. Jones,* 263 Cal. App. 2d 818, 70 Cal. Rptr. 13 (1968); *John v. State,* 160 N.W.2d 37 (N.D. 1968); *cf. Eason v. Dickson,* 390 F.2d 585 (9th Cir.), *cert. denied,* 392 U.S. 914, 20 L. Ed. 2d 1373, 88 Sup. Ct. 2076 (1968).

We conclude that the *Mempa* decision does not compel the right to appointed counsel at a parole revocation proceeding.

The United States Supreme Court has on earlier occasions obliquely discussed the status and rights of parolees who might be allowed to conditionally leave the confines of direct physical custody. In *Ughbanks v. Armstrong,* 208 U.S. 481, 52 L. Ed. 582, 28 Sup. Ct. 372 (1908), the court observed that a state grant of parole was tantamount to the granting of a favor or privilege to a convicted and confined felon, to which the state may attach such conditions as appear appropriate. In *Anderson v. Corall,* 263 U.S. 193, 68 L. Ed. 247, 44 Sup. Ct. 43 (1923), a person on parole was described as one in legal custody and under the control of the paroling authority until the expiration of his original term. The court indicated that parole was a form of amelioration of punishment rather than a release from the penalty for the parolee's initial misconduct. And, in *Zerbst v. Kidwell,* 304 U.S. 359, 82 L. Ed. 1399, 58 Sup. Ct. 872, 116 A.L.R. 808 (1938), parole was characterized as a form of clemency for the deserving administered under the guidance and control of the statutorily designated paroling authority. The court further noted that discretionary parole revoking power was essential to the success of a parole program and that continued service by a parole violator of

his original unexpired sentence was likewise a necessary ingredient. Finally, the concept of a parolee being in custodia legis during the term of his original sentence was reaffirmed in *Jones v. Cunningham*, 371 U.S. 236, 9 L. Ed. 2d 285, 83 Sup. Ct. 373 (1963), wherein it was held that a state felon on parole was under such restraint as would permit him to seek a federal writ of habeas corpus under 28 U.S.C. § 2241 which authorizes federal courts to entertain such a writ from a "prisoner . . . in custody."

■ The underlying rationale of these decisions would appear to be that parole is a statutorily created rehabilitative method whereby a form of leniency, consistent with the interests of society, may be extended to deserving convicted, sentenced, and confined felons. And, furthermore, that, consistent with constitutional due process concepts, any procedural rights a parolee may have, when faced with the prospect of revocation, are to be determined solely from the applicable statutes. Such has been the view adopted by most federal circuit courts of appeal in those cases in which the issue has been presented. *See, e.g., Hyser v. Reed,* 318 F.2d 225 (D.C. Cir.), *cert. denied,* 375 U.S. 957, 11 L. Ed. 2d 315, 84 Sup. Ct. 446 (1963); *Fleming v. Tate,* 156 F.2d 848 (D.C. Cir. 1946); *Washington v. Hagan,* 287 F.2d 332 (3d Cir. 1960), *cert. denied,* 366 U.S. 970, 6 L. Ed. 2d 1259, 81 Sup. Ct. 1934 (1961); *Jones v. Rivers,* 338 F.2d 862 (4th Cir. 1964); *Rose v. Haskins, supra; DiMarco v. Greene,* 385 F.2d 556 (6th Cir. 1967); *Richardson v. Markley,* 339 F.2d 967 (7th Cir.), *cert. denied,* 382 U.S. 851, 15 L. Ed. 2d 90, 86 Sup. Ct. 100 (1965); *Eason v. Dickson, supra; Williams v. Dunbar,* 377 F.2d 505 (9th Cir.), *cert. denied,* 389 U.S. 866, 19 L. Ed. 2d 137, 88 Sup. Ct. 131 (1967); *Williams v. Patterson, supra; Gonzales v. Patterson,* 370 F.2d 94 (10th Cir. 1966).

Such, too, has been the approach of a majority of state courts. *See, Probation-Parole-Pardon-Revocation,* Annot., 29 A.L.R.2d 1074 (1953).

There are various theories advanced in support of the majority view just alluded to. Some courts reason that

parole is an act of grace or privilege, to which the state may attach such conditions as it deems necessary and appropriate. *See, e.g., DiMarco v. Greene, supra; Martin v. State Bd. of Parole,* 350 Mass. 210, 213 N.E.2d 925 (1966). An extension of this approach is the view that revocation procedures, whatever they might be, amount to one of the conditions on which parole is offered and accepted by the parolee, and he cannot complain thereof or demand more. *Murray v. State,* 444 P.2d 236 (Okla. Crim. 1968). Still other courts reason that parolees are still in the legal custody of the state authorities, even though outside the prison walls, and, therefore, parole supervision and revocation are matters tantamount to institutional administration—analogizing the parole status to that of a "trusty" status within the prison, or, mayhaps, the more modern "work-release" program. *See, e.g., In re Varner,* 166 Ohio. St. 340, 142 N.E.2d 846 (1947); *Ex Parte Anderson,* 191 Ore. 409, 229 P.2d 633, *rehearing denied,* 230 P.2d 770, 29 A.L.R.2d 1051 (1951); *Robinson v. Cox,* 77 N.M. 55, 419 P.2d 253 (1966). The last of the most common rationales is that parole revocation is not a criminal prosecution and that the full panoply of procedural due process rights ends with the termination of the criminal prosecution, *i.e.,* final judgment, sentence, and institutionalization. *See, e.g., Shiplett v. Wainright,* 198 So. 2d 647 (Fla. 1967); *John v. State, supra; Richardson v. Markley, supra.*

We have heretofore approved each of these rationales in one form or another. *In re Scott v. Callahan,* 39 Wn.2d 801, 239 P.2d 333 (1951), and *In re Costello,* 22 Wn.2d 697, 157 P.2d 713 (1945). In each of the cited cases we concluded that parole or pardon revocation procedures were governed by the legislative or basic grant of the power rather than by constitutional due process requirements. We are not persuaded that we should abandon our former decisions and break with the vast majority of the other courts of this country by presently enunciating a different rule.

Petitioner, in effect, asks us to supplement and add to our existing statutory provisions regarding parole revocation a proviso that a parolee is entitled as a matter of right to a

revocation hearing with all the constitutional due process attributes of a nonjury criminal trial. This we decline to do.

■ An assertion that a parolee has violated one or more of the conditions of his parole does not amount to an accusation that the parolee has committed a crime. The primary issue raised by such an assertion is whether the parolee, in the light of his alleged behavior, continues to be a good parole risk without endangering society. *Hyser v. Reed, supra; Commonwealth ex rel. Thomas v. Myers,* 419 Pa. 577, 215 A.2d 617 (1966). This is not particularly the kind of an issue which can be best resolved in or by a formal adversary proceeding in the nature of a criminal trial.

To burden this procedure with the injunction that the board act only upon evidence received at a revocation hearing, surrounded by the panoply of constitutional due process and evidentiary requirements attaching to a criminal proceeding, would unduly hamper and delay effective resolution of the basic issue before the board—whether the parolee continues to be a safe parole risk. A proper evaluation of this issue calls into consideration many subtle traits and individual characteristics of the parolee not ordinarily surfacing or appearing in a formal adversary atmosphere. It compels resort to and expert appraisal of objective background material as well as objective current sources of information, some if not much of which must necessarily come from a wide variety of official and unofficial sources, including parole officers, police officers, welfare employees, relatives, neighbors, friends, and associates of the parolee and, mayhaps, informers. If presentation and consideration of this material by the board became subject to the usual evidentiary and procedural limitations of a criminal proceeding it would bode well to deprive the board of information essential to the exercise of its expertise, and would invite interminable delay in the administration of the parole system for the revocation hearing could easily degenerate into a trial of collateral issues.

Furthermore, to require that a quasi-criminal trial be conducted before a conditional parole could be revoked

would, no doubt, result in fewer paroles being granted in the first instance, thus causing an unwarranted curtailment in the use of a recognized and generally accepted penological technique. The prospect of a speedy return to confinement, following a breach of conditions, is one of the basic ingredients of parole and one of the elements tending to curb future antisocial behavior on the part of the parolee. It is essential if parole is to be utilized as an effective rehabilitative tool and continue to enjoy the trust and confidence of the law-abiding citizenry. *Zerbst v. Kidwell, supra.*

From the parolee's standpoint, it should be observed that our parole revocation statute is among the most liberal in the country. The parolee, under the prevailing statute, has a right to a notice and a hearing, the right to present voluntary witnesses at this hearing, and the right to be represented by retained counsel. In our view neither the federal nor state constitution requires more. Since the board is not bound by strict rules of evidence, the parolee may present the testimony of his witnesses in written form if they cannot come to the place of the hearing. The parolee, too, can explain his version of the events leading up to alleged misconduct and the revocation hearing. While assistance of counsel might be helpful in presenting the parolee's views it is not essential, for he himself is the best evidence of whether he remains a good parole risk.

We hold, therefore, that constitutional due process does not demand that an indigent parolee, charged with violating the conditions of his parole, be accorded the invariable right to (a) counsel at public expense, (b) confront and cross-examine adverse witnesses, (c) compulsory process to obtain favorable witnesses, (d) a change of venue for the revocation hearing, or (e) a full transcript of the revocation proceedings.

## II. Equal Protection.

Petitioner, upon this phase of the case, first points out that RCW 9.95.120 grants a right to retained counsel at a parole revocation hearing. He then contends that to grant this opportunity only to those who can afford to retain

counsel denies an indigent parolee equal protection of the law in contravention of the equal protection clause of the fourteenth amendment to the United States Constitution. Secondarily, petitioner argues that since the statute affords the opportunity to present witnesses at the revocation hearing, the absence of compulsory process in favor of an indigent parolee would also deny such parolee equal protection of the law, because he could not pay travel and incidental expenses of favorable witnesses, while an affluent parolee could. In support of these contentions he cites, among others, *Powell v. Alabama*, 287 U.S. 45, 77 L. Ed. 158, 53 Sup. Ct. 55, 84 A.L.R. 527 (1932); *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 Sup. Ct. 585, 12 A.L.R. 39 (1956); *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 Sup. Ct. 792 (1963); and *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 Sup. Ct. 814 (1963).

We find no merit in either contention. The equal protection clause does not require a state to eliminate all inequalities between the rich and the poor. It only prohibits the state from engaging in invidious discrimination. *Douglas v. California, supra.*

Looking first to petitioner's second argument—compulsory process provides a means whereby persons with pertinent information, who may be unwilling to voluntarily appear and testify, can be summoned to be present at an inquiry where their testimony might be useful—our parole revocation statute does not grant the affluent parolee the power to compel witnesses to appear and deny this power to indigent parolees. The statute only permits parolees, rich or poor, to "present" witnesses at the hearing. Moreover, as we have pointed out, if a parolee, rich or poor, is unable to present witnesses at the hearing, he may still, within reason, present their testimony in written form, for the board is not precluded from considering such evidence. The fact that an affluent parolee might be able to encourage more witnesses to voluntarily appear in person than an indigent parolee does not amount to invidious discrimination. The equal protection clause, rationally applied, does not compel

the state to move affirmatively to eliminate any and all differences that the fortunes of life might conceivably entail.

Turning then to the issue of whether the equal protection clause dictates that an indigent parolee be provided with counsel because the statute permits an affluent parolee to retain counsel, we first observe that the cited cases, *Powell v. Alabama, supra; Griffin v. Illinois, supra; Gideon v. Wainwright, supra;* and *Douglas v. California, supra,* all involved an indigent's rights during the course of a criminal prosecution and before judgment and sentence had become final. In *Powell* and *Gideon* the court was concerned with the right of an accused indigent to counsel leading up to and during the criminal trial, and in *Griffin* and *Douglas* the indigent's rights during appeal from a conviction were involved. Thus, in all of the cited cases the indigent was (a) directly involved in a judicial and an adversary criminal proceeding; (b) denied a benefit, otherwise available to the affluent, which was essential to an effective presentation of his case; and (c) opposed by prosecuting counsel.

As we have heretofore observed, a parole revocation hearing is not an adversary criminal proceeding or prosecution. Its basic purpose is to assess whether the parolee, in the light of his conduct on parole, remains a safe social risk. This assessment does not necessarily hinge upon whether the parolee is guilty or innocent of some misdeed, but, rather, whether he is fairly fulfilling the conditions and objectives of his conditional release from institutional confinement. The appearance, demeanor and attitude of the parolee himself necessarily weighs heavily in this determination. To the extent that there may be factual issues involved, including whether parole conditions have been violated, legal representation would perhaps be helpful but we do not conceive it to be essential in the context of this nonjudicial administrative inquiry. Furthermore, we have been advised that neither the board nor the state in any other form is ever represented by counsel at these hearings, even though a parolee may be so represented.

The situation is clearly distinguishable from the circumstances and thrust of the *Powell, Griffin, Gideon,* and *Douglas* cases, and we find no invidious discrimination otherwise.

We accordingly hold that the absence of statutory provisions for compulsory process and the appointment of counsel for indigent parolees charged with breaching the conditions of their parole does not contravene the equal protection clause of the fourteenth amendment to the United States Constitution.

### III. FAIR AND IMPARTIAL HEARING.

Finally, petitioner contends that he did not receive the "fair and impartial hearing" provided for by RCW 9.95.120. He points out, first, that he was given notice of the parole revocation hearing only 2 days before it was held, and, second, that he was not formally advised of the conditions of his parole allegedly violated until the hearing had begun.

RCW 9.95.120 provides that any board order revising, modifying, or suspending parole shall be personally served upon the parolee. It further provides, in the event a parolee is accused of breaching a condition of his parole, other than by way of a felony or misdemeanor conviction, that he shall be entitled to a "fair and impartial hearing," at which he is entitled to be heard and defend himself with the right to present evidence and witnesses on his behalf and be represented by retained counsel. It is apparent from this statute that the legislature intended that a parolee, at a revocation hearing, be given an opportunity to prepare to meet any specific allegations of misconduct and that he be afforded the liberty of participating in the hearing to the extent provided.

It is a fundamental proposition that one must be given adequate notice before he may be fairly called upon to answer accusations. When the legislature provided that an order of suspension be personally served upon a parolee and that he be entitled to a "fair and impartial hearing" upon certain charges, it unquestionably did so with this proposition in mind.

While it is probable in the instant case that petitioner could readily surmise or was in some fashion advised by his parole officer of the reasons for the suspension and proposed revocation of his parole sometime before November 30, 1964, nevertheless, the record as it comes to us does not so indicate. For aught that appears in the record, petitioner did not receive formal notice of the suspension of his parole until 2 days before the projected hearing and did not receive formal advice as to the particular act or acts constituting the alleged breach of his parole until commencement of the hearing. Patently, this is insufficient notice to permit preparation of any defense he might have, or even, for that matter, to comply with the suspension order's directive concerning 48-hour notification to the superintendent of the institution of any witnesses or counsel which petitioner might have at the hearing. Such inadequate notice does not beget nor bespeak a fair and impartial hearing.

In conclusion, it is our view that RCW 9.95.120 requires that a parolee accused of violating conditions of his parole, short of a felony or misdemeanor conviction, shall, prior to a revocation hearing, be given timely formal notice of (1) the conditions which he is accused of violating, (2) the manner in which he is accused of violating such conditions, and (3) the date and place of the proposed hearing. Preferably this should be done at the time of his initial detention by his parole officer or within a reasonably short time thereafter. And, preferably, it should be accomplished in such a manner as to foreclose dispute as to the parolee's timely receipt thereof.

Because of the untimely notice in the instant case, the writ prayed for will issue and petitioner will be released from respondent's custody, unless within 30 days the board shall, with adequate notice thereof, grant petitioner a new revocation hearing.

The remittitur shall go down forthwith.

ALL CONCUR.