[No. 29556. Department One. April 4, 1945.]

*In the Matter of the Application of* THOMAS W. COSTELLO *for a Writ of Habeas Corpus.*[1]

¹Reported in 157 P. (2d) 713.

John C. Richards, for appellant.

Leslie Cooper and C. P. Brownlee, for respondent.

JEFFERS, J.—This is an appeal by Thomas W. Costello, hereinafter referred to as appellant, from an order made and entered by the superior court for Snohomish county on October 3, 1944, quashing a writ of *habeas corpus* theretofore issued by the court on September 12, 1944. Appellant was convicted of the crime of murder in the second degree in the superior court for Chelan county, and, on September 27, 1933, was sentenced to imprisonment in the Washington state penitentiary for a term of not less than ten nor more than twenty-five years. No question is raised herein as to the conviction or sentence imposed.

On April 26, 1939, Governor Martin issued a conditional pardon to appellant. This pardon was granted and accepted with the distinct understanding that appellant adhere strictly to the terms, conditions, and rules governing conditional pardons, and any rules and regulations which the governor might adopt on the subject, and with the further understanding that the governor *could at any time revoke the same without notice* and could cause appellant to be returned to the penitentiary to resume serving his sentence. Attached to, and as a part of this pardon, are certain rules, among which are the following:

"7. You shall not carry any concealed or 'deadly weapon' or be in possession of burglary tools. (A deadly weapon includes any instrument known as a black jack, sling shot, billy, sand club, sand bag, metal knuckles, and any dirk, daggers, pistol, revolver, or any other fire arm, and any knife having a blade longer than three inches, and any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club, and any explosive and any weapon containing poisonous or injurious gases.)

"8. You shall abstain from the excessive use of intoxicating liquor. . . .

"10. You shall avoid evil associates and not frequent improper places of amusement, nor loiter upon the streets at night, and shall respect and obey the law and at all times conduct yourself as a good citizen."

On October 13, 1943, and while appellant was at liberty under the conditional pardon, the board of prison terms and paroles issued to appellant what purports to be a final discharge, wherein it is recited that,

"WHEREAS, Thomas W. Costello was on the 27th day of September, 1933, committed to the state penitentiary from Chelan County, for the crime of Second Degree Murder, and

"WHEREAS, the said Thomas W. Costello was on the 30th day of April, 1939, released from the confines of the said state penitentiary on parole, and

"WHEREAS, it now appears that no useful purpose will be served by continuing the said Thomas W. Costello on parole,

"Now, THEREFORE, the Board of Prison Terms and Paroles of the State of Washington, by virtue of the authority vested in it by the laws of said state, does hereby release and discharge said Thomas W. Costello *from any further obligation imposed upon him as a condition of his said parole.*" (Italics ours.)

It does not appear from this record that appellant was ever released from the penitentiary under a parole issued by the board of prison terms and paroles or under any order other than the conditional pardon issued by the governor. In fact, appellant admitted that he had been released under the conditional pardon.

On August 19, 1944, Governor Arthur B. Langlie revoked and canceled the conditional pardon theretofore issued by Governor Martin for the following reasons, which are stated in the order of revocation:

"WHEREAS, the conditions of said Conditional Pardon have been violated by said Thomas W. Costello in that he frequented taverns in the City of Everett, being intoxicated, having in his possession a forty-five pistol and during the course of an argument he threatened several soldiers; . . .

"Now, THEREFORE, I, ARTHUR B. LANGLIE, Governor of the State of Washington, by virtue of the authority in me vested, do hereby revoke and cancel said conditional Pardon and hereby direct and order the chief parole officer of the State of Washington, *or any other law enforcement officer* to ar-

rest and return to custody said THOMAS COSTELLO." (Italics ours.)

On September 12, 1944, appellant filed in the superior court for Snohomish county his petition for a writ of *habeas corpus,* wherein he alleged among other things that he had been discharged from the penitentiary by the board of prison terms and paroles under and by virtue of the order of October 13, 1943, and that he was unlawfully held in the Snohomish county jail by the sheriff of Snohomish county. Upon the filing of appellant's petition, a writ of *habeas corpus* was issued directing the sheriff of Snohomish county to appear before the court on September 18, 1944, and have with him the appellant, and then and there show cause, if any he had, why appellant should not be restored to his liberty. The sheriff answered the writ, alleging therein that he had arrested appellant on September 2, 1944, and confined him in the Snohomish county jail pursuant to the order of Governor Langlie revoking the conditional pardon and directing the chief parole officer, or any other law enforcement officer, to arrest and return appellant to custody.

The matter came on for hearing before the court on September 18, 1944, and, after a number of hearings and continuances, the court, on October 3, 1944, made and entered an order quashing the writ issued September 12, 1944, and refusing to release appellant from the Snohomish county jail. Appellant gave oral notice of appeal from the order entered.

Appellant contends that the court erred in quashing his petition, in refusing to release him from the Snohomish county jail, in holding that the governor and the board of prison terms and paroles had power to revoke petitioner's conditional pardon without notice, in holding that the final discharge given by the board of prison terms and paroles was a nullity, in holding that the sheriff of Snohomish county had power to detain petitioner pursuant to the warrant under which he acted, and in entering judgment against petitioner.

It may be admitted that appellant was not notified of the revocation of his conditional pardon, nor was he given a

hearing on the charges upon which the revocation was based. Appellant seems to argue in his brief, and his counsel argued before this court, that the board of prison terms and paroles is nothing more nor less than an agency of the governor, and that the acts of the board should be considered the acts of the governor.

While it probably is true that the governor and the board of prison terms and paroles cooperate, yet we are of the opinion that the power to issue a full or conditional pardon is vested entirely in the governor and is in no way dependent upon any act or acts of the board of prison terms and paroles, and, by the same token, the board of prison terms and paroles has been vested with certain powers by the statutes relative to paroles, and, in so far as the board acts within the power vested in it by the statutes, it acts independently of the governor.

It must also be admitted, as shown by this record, that appellant's conditional pardon was revoked for reasons that were specifically set out in the conditional pardon as grounds for its revocation. The conditional pardon also specifically stated it could be revoked *without notice.*

The first question to be determined is whether or not the governor has the power to revoke a conditional pardon without notice for a violation of the rules and regulations, or any of them, governing, and made a part of, such conditional pardon.

In *Spencer v. Kees,* 47 Wash. 276, 91 Pac. 963, this court had under consideration the right of the governor to revoke a conditional pardon. There, we stated, p. 279, that the question raised was

" . . . whether the governor was authorized to issue his warrant declaring the conditional pardon void and ordering the appellant to be again taken into custody *without giving the appellant an opportunity to be heard.*" (Italics ours.)

After citing § 9, Art. III, of the constitution and Bal. Code, § 6997, which is the same as Rem. Rev. Stat., § 2223, the court stated, p. 280,

"No other regulations or restrictions have been prescribed by law, and no other method has been provided for determining when the conditions of a pardon have been broken.

"The appellant insists that the provision that the governor may issue his warrant to carry such pardon into effect refers only to the *manner of release,* and was not intended to provide a *method of revocation.* There would be much force in this contention if other provisions had been made for determining when conditional pardons have been violated, but there are none. We are of the opinion, therefore, that the provision above stated reposes power in the governor, not only to effect the release, but to make *conditional pardons effective.* There can be no doubt that the governor was authorized to grant the *pardon upon the conditions named, or any others which were capable of being performed and which were not illegal or immoral,* and when the appellant accepted the conditional pardon as given *he was bound by all its provisions.* If the pardon had been unconditional, the release under it would have been final and the governor and the courts would have been without power to again enforce imprisonment under the original sentence. But this was a conditional pardon, such as the governor had power to impose. *He granted it as a matter of grace and not of duty.* . . . We are, therefore, of the opinion that the governor had power to enforce the performance of the conditions, and *when he became satisfied* that the conditions of the pardon were being violated, he was authorized to issue his warrant revoking the pardon under the express terms of the pardon and under the statute." (Italics ours.)

While it might be argued that, in the cited case, this court did not specifically pass on the question of whether appellant was entitled to notice and a hearing before his conditional pardon could be revoked, we are of the opinion that, in view of the question before the court, as hereinbefore set out, the effect of that decision is that the conditional pardon therein granted could be revoked without notice or hearing for a violation of the conditions upon which the pardon was granted.

In the case of *In re Henry,* 21 Wn. (2d) 283, 150 P. (2d) 693, we stated, p. 266:

"Under § 9, Art. III, of the constitution, *the pardoning power is vested in the governor, under such regulations and restrictions as may be prescribed by law.* There is no

question, it seems to us, but that the governor had authority under Rem. Rev. Stat., § 2223, to issue a conditional pardon, as was done in this case by executive order dated February 18, 1943, which order set out the conditions upon which the pardon was granted. [The pardon contained a provision, as does the pardon in the instant case, that it could be revoked by the governor at any time *without notice*.] Neither is there any question in our minds but that the governor had authority to revoke the conditional pardon, as was done in this case, because of failure to comply with the conditions upon which such pardon was granted." (Italics ours.)

However, if there be any doubt as to what the cited cases hold, we now state we subscribe to the rule, which is supported by the great weight of authority and is to the effect that, where a conditional pardon is granted by the governor containing an express provision that it may be revoked at any time by him without notice, the governor may summarily revoke such conditional pardon at any time without notice or hearing for a violation of any one or all of the conditions upon which such pardon was granted and accepted. See 39 Am. Jur. 568, § 77.

When, by express stipulation, the power to revoke a parole or conditional pardon is reserved in the granting power, a convict has no right to notice and hearing before revocation. 54 A. L. R., annotation "c," p. 1483. See, also, 60 A. L. R. 1421 under heading "Provision for rearrest on breach of condition"; 132 A. L. R., annotation, p. 1257, under heading "Under reservation of power to revoke."

We, therefore, conclude that, unless the board of prison terms and paroles had authority to grant a final discharge to appellant, under the facts as disclosed by the record herein, Governor Langlie had the power to revoke the conditional pardon granted to Costello without notice or hearing, and that, under and by virtue of the order of revocation of August 19, 1944, the sheriff of Snohomish county was justified in arresting appellant and confining him in the Snohomish county jail for a reasonable length of time until he could be returned to the state penitentiary to continue serving his sentence.

We will next discuss the purported final discharge of appellant, made by the board on October 13, 1943. We desire to call attention to the concluding paragraph of this discharge:

"Now, therefore, the Board of Prison Terms and Paroles of the State of Washington . . . does hereby *release and discharge said Thomas W. Costello from any further obligation imposed upon him as a condition of his said parole.*" (Italics ours.)

While this purported discharge uses the word "parole," the record does not disclose that appellant was ever granted a parole by the board; but, to the contrary, the record shows, and appellant admits, that he had been released from the penitentiary under and by virtue of the conditional pardon. What the board attempted to do, then, was discharge appellant from all obligations imposed by the conditional pardon. No question of a parole is involved herein.

The question really presented here is whether the board of prison terms and paroles had authority, finally, to discharge appellant from all obligations imposed by the conditional pardon issued by the governor. If the board had such power under the statute, it seems to us to be apparent that its effect is to give to it the power to pardon.

The pardoning power has been vested by the constitution expressly in the governor. Article III, § 9, provides:

"The pardoning power shall be vested in the governor under such regulations and restrictions as may be prescribed by law."

We stated in *State ex rel. Rogers v. Jenkins*, 20 Wash. 78, 54 Pac. 765, that the pardoning power is vested in the governor.

"The authority to regulate and restrict does not confer the power to abrogate the executive function of pardon. Cooley, Constitutional Limitations (5th ed.), p. 136."

In 1 Cooley's Constitutional Limitations (8th ed.), beginning on p. 213, the subject of legislative encroachment upon executive power is discussed, and, in the notes on p. 217, we find the following statements, which seem to find general support:

"The pardoning power is neither naturally nor necessarily an executive power. It is a power of government inherent in the people, who by constitutional provision may vest it in whole or in part in any official they choose."

In *Jamison v. Flanner*, 116 Kan. 624, 228 Pac. 82, 35 A. L. R. 973, the court had under consideration a constitutional provision identical with our Art. III, § 9. At page 630 of the cited case, the opinion states:

"When the court's attention is called to the pardon it will not inquire into the motives which prompted the pardoning official to issue the pardon, for to do so would be to usurp the pardoning power; but the court will inquire into the authority of the pardoning official to issue the particular pardon in question, will inquire as to whether fraud was practiced upon the particular official, if that be suggested, . . . will examine the pardon to see that it is valid upon its face, and if it is conditional will inquire as to whether or not the conditions have been complied with."

■ Appellant does not contend in the instant case that he has not violated the terms and conditions of the conditional pardon. Where the power is given to the governor by the constitution in unrestricted terms, it cannot be taken away, nor can a like power be given by the legislature to any other officer or authority.

A well-considered Vermont case dealing with the right of the board of prison commissioners of that state under the Vermont law and the effect of the action of such board on the pardoning power which was vested in the governor, will be found in *In re Conditional Discharge of Convicts*, 73 Vt. 414, 51 Atl. 10, 56 L. R. A. 658.

In the instant case, the effect of the purported discharge by the board of prison terms and paroles was to pardon appellant or relieve him from serving any additional part of the sentence imposed upon him and to nullify the right of the governor to revoke the conditional pardon for a violation of its conditions.

We are satisfied that the board had no authority to make such an order and that the purported final discharge was a nullity and constituted no ground for appellant's contention

that, having been lawfully discharged from the obligations of the conditional pardon by such final discharge, the governor had no authority to thereafter revoke such conditional pardon and order appellant to be taken into custody to continue serving the sentence imposed upon him.

Appellant relies upon certain sections of chapter 114, Laws of 1935, p. 308, Rem. Rev. Stat. (Sup.), § 10249-1 [P. C. § 4503-31], *et seq.*, to sustain his contention. Chapter 114, Laws of 1935, is entitled, "Board of Prison, Terms and Paroles."

The board of prison terms and paroles was created by chapter 114, which defines its functions, powers, duties, and limitations. This chapter does not, either expressly or by implication, vest in the board of prison terms and paroles the power to pardon, either conditionally or fully, but deals only with the rights of the board to parole. In fact, § 4 of the act specifically reserves to the governor the right to pardon.

We are of the opinion that the only part of said chapter which could be construed as giving to the board the right to discharge a person from custody who had been convicted and sentenced prior to the effective date of chapter 114 is the following, p. 311:

"Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of this section, shall, in accordance with the provisions of existing law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted, or the maximum term fixed by the court where the law does not provide for a maximum term."

Appellant, on September 27, 1933, was sentenced to a term of not less than ten nor more than twenty-five years in the penitentiary. The purported final discharge is dated October 13, 1943. It is apparent that appellant had not served the maximum term fixed by the court at the time of his purported discharge.

We are not called upon to, and we do not, pass upon the question of whether or not the board of prison terms and

paroles has the authority under chapter 114 to fix the duration of confinement of a person who was convicted and sentenced to either the penitentiary or reformatory prior to the effective date of chapter 114. It may be stated that, in the instant case, it does not appear that the board ever attempted to fix the time appellant should be confined.

We are satisfied no authority can be found in chapter 114 even purporting to vest in the board of prison terms and paroles the power to make such an order as was made herein. Had such an attempt been made, it clearly would have been an unlawful infringement upon the exclusive pardoning power vested in the governor. The governor had authority to grant the conditional pardon, and, having granted it, he also had the authority to change the status of the one pardoned. See *In re Henry, supra.* While the cited case is factually different from the instant case, it bears out our conclusions relative to the authority of the board of prison terms and paroles under chapter 114.

The trial court properly refused to release appellant from custody, and the judgment of the trial court is therefore affirmed.

BEALS, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.