[No. 31829.. Department One. December 20, 1951.]

*In the Matter of the Application for a Writ of Habeas Corpus of* John M. Scott, *Respondent,* v. Harlan Callahan, *as Sheriff of King County, Appellant.*[1]

¹Reported in 239 P. (2d) 333.

The Attorney General, Jennings P. Felix, Assistant, Charles O. Carroll, and F. A. Walterskirchen, for appellant.

C. T. Hatten, for respondent.

WEAVER, J.—John M. Scott was tried and convicted of second degree burglary. December 21, 1940, he was sentenced to a term in the penitentiary of not more than fifteen years. Pursuant to its statutory authority (Rem. Rev. Stat. (Sup.), § 10249-4 [P.P.C. § 786-1]), the board of prison terms and paroles (herein called the Board) released him from confinement upon parole September 19, 1945. Seventeen conditions were attached to the parole, the first of which was:

"That this parole is granted to and accepted by the parolee subject to all its terms and conditions and with the understanding that the Board of Prison Terms and Paroles *may at any time within its discretion and without notice cause the parolee to be returned to the said institution* to serve the full maximum sentence or any part thereof." (Italics ours.)

Subsequently, on September 9, 1946, the Board entered a "Final Discharge from Supervision," which read, in part, as follows:

"WHEREAS, it now appears that no useful purpose will be served by continuing the said John M. Scott on parole.

"Now, THEREFORE, The Board of Prison Terms and Paroles of the State of Washington, by virtue of the authority vested in it by the laws of said state, *does hereby release and discharge* said John M. Scott *from any further obligation imposed upon him as a condition of his said parole.*" (Italics ours.)

Almost four years later, November 3, 1950, the Board issued a "Revocation of Parole," which stated:

"WHEREAS, The Board of Prison Terms and Paroles, *exercising its discretion, deems it for the best interests of society* and the parolee, that he be returned to the custody of the superintendent of the Washington State penitentiary, there to remain not to exceed his maximum sentence or until the further order of the Board:

"WARRANT

"Now, THEREFORE, The Board of Prison Terms and Paroles, by virtue of the authority in it vested by law, does hereby authorize and direct any peace or parole officer of the State of Washington to apprehend and take into custody the said John Scott . . . and return to said institution is hereby ordered." (Italics ours.)

In accordance with the warrant, Scott was taken into custody. He made application to the superior court for a writ of *habeas corpus,* his theory being:

"That petitioner, not being on parole as the result of the conviction and having been released from the penitentiary upon the opinion of the Board of Prison, Terms and Paroles that petitioner's rehabilitation had been complete and that he was a fit subject for release, is being deprived of his liberty without due process of law and [in] contravention of the Fourteenth Amendment of the Constitution of the United States and of the Constitution of the State of Washington."

In answer to the writ it was alleged, *inter alia,* that Scott had been living with a female ex-convict for the past five years, had been associating with other convicts, and had been using nembutal tablets, which conduct was specifically prohibited by several of the seventeen conditions of the parole of September 19, 1945.

The matter was presented upon the issues and admissions raised by the pleadings. The trial court found that Scott had been deprived of his liberty "without charges," without notice and hearing, and without due process of law; that his arrest and detention, at the order and warrant of the Board, was without authority of law; and that the discharge of September 9, 1946, released him from *any* con-

ditions of parole. He was ordered released "from imprisonment and custody."

The state has appealed.

Courts are constantly called upon to strike a nice balance between the rights of individuals and the rights of society. A person cannot be deprived of life, liberty, or property without due process of law. In turn, society is entitled to an interpretation of its laws, to the end that the administration of justice may be upon a sound, practical basis. Both rights are entitled to protection.

Found guilty by a jury, Scott was sentenced to a term of not more than fifteen years in the penitentiary. There was no appeal. Only one of three events might release him from *custodia legis*: (1) an absolute pardon from the governor; (2) his death prior to the expiration of fifteen years; or (3) the expiration of his maximum sentence.

▇ The Board has no power, statutory or otherwise, to affect his maximum sentence in any manner. Its power is limited to permitting a convicted person to leave the enclosure of the penitentiary after he has served a period of confinement fixed for him by the Board in accordance with Rem. Supp. 1947, § 10249-2. This, it may do, when, in its opinion, he has been rehabilitated and is a fit subject for release. Rem. Rev. Stat. (Sup.), § 10249-4; *In re Pierce v. Smith*, 31 Wn. (2d) 52, 195 P. (2d) 112.

▇ Parole releases from confinement a convict who has been committed to an institution, before the expiration of his maximum sentence. It follows a period of training and education in the institution. The granting of parole is not a matter of right but is a matter of grace, privilege or clemency granted to the deserving and withheld from the undeserving as sound discretion may dictate. *State v. Farmer, ante* p. 675, 237 P. (2d) 734. A prisoner in the penitentiary is not entitled to release as a matter of right until he has completed his maximum sentence. *In re Butler v. Cranor*, 38 Wn. (2d) 471, 230 P. (2d) 306.

The statute authorizes the Board to grant parole in its discretion under such rules, regulations, and conditions as it may determine. The Board

" . . . shall also have the power to return such person to the confines of the institution from which he or she was paroled, *at its discretion.* . . . " Rem. Rev. Stat. (Sup.), § 10249-4. (Italics ours.)

■ While the board may determine "that no useful purpose will be served" by continuing the enforcement of rules and regulations governing the conduct of a paroled convict, and may release and discharge him "from any further obligation imposed upon him as a condition of his parole," it cannot waive the right to exercise the discretion imposed upon it by statute to return the parolee to the confines of the institution from which he was paroled, should the Board determine that the best interests of society require the reincarceration of the parolee. Should the "Final Discharge from Supervision" of September 9, 1946, be construed to constitute a waiver of the Board's statutory right to exercise this discretion, it would have the practical effect of permitting Scott to be free from any and all restraints by reason of his conviction and fifteen-year sentence. Such an act would be in excess of the Board's statutory power; and, it might well be argued, it would be *in the nature* of a pardon without restoration of civil rights, a field reserved exclusively for the governor. See *In re Costello,* 22 Wn. (2d) 697, 157 P. (2d) 713.

■ While the Board has the right to discharge a parolee from surveillance, it cannot enlarge or extend the term fixed by the court's commitment (*In re Wyback v. Board of Prison Terms & Paroles,* 32 Wn. (2d) 780, 203 P. (2d) 1083), nor can it discharge a convict from *custodia legis* before the expiration of the maximum term for which he has been sentenced.

■ Scott was not given notice of the revocation of his parole, nor an opportunity to be heard thereon. Did this deprive him of his liberty without due process of law in contravention of the fourteenth amendment to the constitu-

tion of the United States and Art. I, § 3, of our state constitution? We do not believe that it did. Scott had his day in court when he was tried and convicted of a felony and was sentenced to a maximum term of fifteen years. Pursuant to the statute, parole was granted upon the express condition that the board "may at any time within its discretion and without notice cause the parolee to be returned to the said institution to serve the full maximum sentence or any part thereof." The Board cannot surrender its right to exercise this discretion.

Under somewhat similar circumstances, we said, in *In re Costello, supra:*

"When, by express stipulation, the power to revoke a parole or conditional pardon *is reserved in the granting power,* a convict has no right to notice and hearing before revocation. 54 A. L. R., annotation 'c,' p. 1483. See, also, 60 A. L. R. 1421 under heading 'Provision for rearrest on breach of condition'; 132 A. L. R., annotation, p. 1257, under heading 'Under reservation of power to revoke.'" (Italics ours.) (p. 703.)

In the *Costello* case, *supra,* and in *Spencer v. Kees,* 47 Wash. 276, 91 Pac. 963, we held that the governor had the right to revoke a conditional pardon without notice and without hearing. In our opinion, when the express power to revoke is reserved to the granting power, as it was in the pardon cases, and as it is in the instant case, there is no constitutional difference between revocation of a conditional pardon and revocation of a parole under our present statute. For this reason, we regard the *Costello* case as controlling. *State v. O'Neal,* 147 Wash. 169, 265 Pac. 175, is distinguishable upon the ground that there was no *express* power specifically reserved to revoke the suspended sentence; hence, a hearing was necessary.

 Whether the Board abused its discretion in revoking Scott's parole is not before us. This issue cannot be raised in *habeas corpus* proceedings for the reason that he is in custody upon a process, valid on its face, issued by a court of competent jurisdiction. *In re Grieve,* 22 Wn. (2d) 902, 158 P. (2d) 73; *In re Mohr,* 26 Wn. (2d) 188, 173 P. (2d)

141; Rem. Supp. 1947, § 1075; and see *In re Pierce v. Smith, supra,* at p. 60.

For the reasons given herein, we hold that the trial court erred in ordering John M. Scott released from imprisonment and from the custody of the sheriff of King county.

The judgment is reversed.

MALLERY, HILL, GRADY, and DONWORTH, JJ., concur.

February 21, 1952. Petition for rehearing denied.