[No. 40108.    Department Two.    February 26, 1970.]

*In the Matter of the Application for a Writ of Habeas Corpus of* Elwood Joseph Honore, *Appellant,* v. The Washington State Board of Prison Terms and Paroles, *Respondent.*[*]

George M. Martin (of *Martin & Marquis*), for appellant (appointed counsel for appeal).

*The Attorney General* and *Paul J. Murphy, Assistant,* for respondent.

Hale, J.—Petitioner in this appeal brings an issue he could readily have presented earlier in these proceedings when we decided en banc that the trial court had discretion to appoint counsel for him but not at public expense. *See Honore v. State Bd. of Prison Terms & Paroles,* 77 Wn.2d

*Reported in 466 P.2d 505.

660, 466 P.2d 485 (1970). The petition now urges a substantive claim that the Washington State Board of Prison Terms and Paroles lost jurisdiction of petitioner when, during his term of imprisonment, it paroled him to the federal courts for trial and imprisonment on a federal indictment.

September 13, 1963, petitioner appeared with counsel before the Superior Court of the State of Washington for Yakima County and entered a plea of guilty to the charge of grand larceny. The court duly entered a judgment and sentence directing his imprisonment for a maximum term of 15 years, expiring September, 1978. His minimum sentence was thereafter, on December 13, 1963, fixed at 5 years by respondent Board of Prison Terms and Paroles. In June, 1966, the board informed petitioner that he was being considered for parole, but that his release on parole would involve his return to the jurisdiction of the United States District Court and federal authorities for service of a federal sentence.

Prior to his release to the federal authorities in July, 1966, he says he was, under circumstances amounting to coercion, required to sign a document entitled "Agreement to Return" which declared that he would not contest any effort to return him to the state of Washington. He contends that this was an unconstitutional and coercive device to force him to accept parole. We need not pursue the written waiver further, for it seems to have little relevance to the issues raised by the petition. Respondent does not invoke this written promise to return nor assert any jurisdiction over the petitioner by reason of his signature upon it, but rather answers that the board is holding petitioner to the service of an unexpired sentence of imprisonment set forth in a judgment and sentence duly issued by a court of competent jurisdiction of the state of Washington.

From the record, it appears that respondent released petitioner on parole into the custody of federal authorities on July 18, 1966. The order, entitled "Order of Parole," issued by the board and granting the parole, set forth the ten specific conditions ordinarily imposed on a parolee and ad-

ditionally, in a space designated "special conditions," stated "Parole to DETAINER only." Another document issued by authority of the board and referred to as a "Release Authorization" also stated, *inter alia*, that Elwood Honore is to be released to a "Federal Detainer." With the execution of these documents, petitioner was then turned over to federal officers to resume service of a sentence of imprisonment at the United States Penitentiary at McNeil Island, Washington. After sojourning briefly at McNeil Island under a sentence of the District Court of the United States, petitioner on March 3, 1967, was released from custody—presumably on parole from that institution. From McNeil Island, he went to live at Yakima, reporting to his state probation and parole officer 3 days later, March 6, 1967. He remained there on parole under the instant judgment and sentence and under supervision of his parole officer until arrested by the Yakima city police on several charges of criminal offenses. According to the trial court's findings, he "was confined in the Yakima City Jail, awaiting trial for said offenses, when his application for release in habeas corpus was filed, and when this matter came on for hearing." Thus, respondent Board of Prison Terms and Paroles on August 28, 1967—while defendant was in jail awaiting trial on other charges in Yakima—issued an order canceling his parole, ordered his return to prison, and directed, in execution of the order canceling parole, that he be taken into custody.

The main questions, therefore, are (1) May the Board of Prison Terms and Paroles during the maximum term of sentence constitutionally grant parole for the exclusive purpose of making a convicted felon available for trial in or service of sentence imposed by a court of the United States or of a court of a sovereign state? (2) If the board has the power to grant parole, does it, in exercising this power, lose jurisdiction over the parolee prior to the expiration of his maximum sentence? (3) Does parole to another state or to the United States abrogate the judgment and sentence upon which the board's power rests?

■ Since this is a government of laws and not of men, the ultimate power to order punishment by imprisonment or death for conviction of crime lies exclusively in the courts and not in the executive branch of government. The duty to carry out the judgment and sentence under our scheme of government rests, of course, upon the executive branch of government, represented in this instance by the Board of Prison Terms and Paroles. Thus, while the board has wide discretionary powers accorded it by statute in prescribing the mode, manner and duration of the service of the sentence, it has no statutory or other power to reduce, increase or alter the maximum sentence. RCW 9.95.110; *Scott v. Callahan,* 39 Wn.2d 801, 239 P.2d 333 (1951); *Mason v. Cranor,* 42 Wn.2d 610, 257 P.2d 211 (1953). A convicted felon remains in custodia legis and amenable to the duly entered judgment and sentence of a court of competent jurisdiction, and is released therefrom only by the occurrence of one of three possible events: (1) an absolute pardon from the Governor; (2) death of the defendant prior to the expiration of the maximum sentence; or (3) the expiration of the maximum declared in the judgment and sentence. *Scott v. Callahan, supra; Mason v. Cranor, supra.*

In granting parole, the Board of Prison Terms and Paroles is not acting within the constitutional powers of the Governor to grant pardon, for the Governor's powers are vested in him by the constitution (Const. art. 3, § 9; *In re Costello,* 22 Wn.2d 697, 157 P.2d 713 (1945)), and are not, therefore, delegable to other segments of the executive branch. *In re Costello, supra.* The board thus acts independently of the Governor and pursuant to statutes vesting special powers in it. When the Board of Prison Terms and Paroles placed the petitioner on parole to respond to a federal detainer, it was acting not as the Governor would do under pardoning power nor affecting the judgment and sentence of the superior court, for this it is without power to do. *State ex rel. Mason v. Superior Court,* 44 Wn.2d 67, 265 P.2d 253 (1954). Instead, the board acted in accordance

with the statutes empowering it to grant paroles. RCW 9.95.

■ Petitioner knew that his parole was conditioned upon his surrender to federal authorities for the exercise of federal jurisdiction. He accepted parole with knowledge that this was among the conditions and so long as the maximum state sentence had not expired his parole status while in federal custodia legis disturbed neither the legal operation nor the force of a subsisting state judgment and sentence. The federal detainer was but one of many reasonable and lawful terms which respondent Board of Prison Terms and Paroles could impose as a condition of parole.

Our view that the board did not lose jurisdiction nor the state judgment and sentence abridge when the petitioner was turned over to federal authorities is, we think, supported by a reciprocal view in the federal system. In *Murray v. United States*, 334 F.2d 616 (9th Cir. 1964), it was held that the release of a federal prisoner to state authorities for the purpose of serving a state sentence prior to the expiration of the federal term did not "effectuate a loss of federal jurisdiction over the individual so released." That court, upon substantial authority from other circuits, there held as we do now that, upon the release on parole from state custody into the custody of another sovereign, the parolee may, prior to expiration of the state sentence upon release from the other sovereign's custody, be returned into the custody of the state from which he was paroled for completion of his sentence.

Affirmed.

HUNTER, C. J., ROSELLINI and NEILL, JJ., and ENNIS, J. Pro Tem., concur.