[No. 68566-5.   En Banc.]
Argued June 22, 2000.    Decided February 1, 2001.

*In the Matter of the Personal Restraint of* LARRY A.
QUACKENBUSH, *Petitioner.*

*Eric Broman* and *Eric J. Nielsen* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Christine O. Gregoire, Attorney General*, and *Heather Klein, Assistant*, for respondent.

MADSEN, J. — In this personal restraint petition, petitioner Larry Quackenbush challenges the authority of the Indeterminate Sentence Review Board (Board) to rescind its final discharge order under the 1993 amendment to the final discharge statute, RCW 9.96.050. The Board returned Quackenbush to the custody of the Department of Corrections when it discovered Quackenbush had violated his parole. We hold that a final discharge issued under RCW 9.96.050 does not divest the Board of authority to rescind the final discharge of an offender who violates the conditions of parole prior to final discharge. Accordingly, we

affirm the Court of Appeals' order dismissing Quackenbush's petition.

## FACTS

Quackenbush was convicted of second-degree murder in 1980 and sentenced to a maximum term of 30 years in prison. He was initially paroled in August 1985, but parole was revoked after he committed parole violations. Three years later, in April 1988, Quackenbush was again released on parole, this time to California where he had family. He was again charged with violating the conditions of his parole, but the Board reinstated Quackenbush's parole on September 2, 1989.

Quackenbush continued to engage in criminal activities. In January 1993, he committed three robberies and possessed a firearm and heroin in violation of the conditions of his parole. Prosecutors in three separate California counties charged Quackenbush for these felonies. Between May 1993 and April 1994, Quackenbush was tried, convicted, and subsequently sentenced to maximum terms ranging from one year to five years in prison.

Unaware of these recent California convictions the Board issued a final discharge to Quackenbush in July 1993 and restored his civil rights. *See* RCW 9.96.050. Two months later, in September 1993, the Board learned of Quackenbush's convictions and rescinded the final discharge order. The Board then issued a warrant suspending Quackenbush's parole, deferring action so that Quackenbush could serve his sentences in California.

In September 1998, Quackenbush was extradited to Washington. Following a parole revocation hearing in which Quackenbush admitted the alleged violations, the Board revoked parole and placed Quackenbush in the custody of the Washington State Department of Corrections. Quackenbush's maximum release date is now December 10, 2009.

Quackenbush filed a personal restraint petition in which

he claimed that the Board lacked authority to rescind the final discharge which resulted in his return to prison. Chief Judge Bridgewater dismissed the petition, ruling that the Board had discretion to revoke parole any time before the expiration of Quackenbush's maximum sentence.

## ANALYSIS

We are asked to decide whether the Board has authority to return a parolee to prison once a final discharge from parole is issued under RCW 9.96.050, the final discharge statute. Although this court has not interpreted the Board's authority following a 1993 amendment to the statute, the power of the Board under earlier versions of the statute has been the subject of a number of opinions.

The Board was created by statute in 1935.[1] *See* LAWS OF 1935, ch. 114, § 1; REM. REV. STAT. § 10249-1 (Supp. 1947). Ten years later, in *In re Application of Costello*, 22 Wn.2d 697, 157 P.2d 713 (1945), this Court considered whether the Board had authority under the 1935 statute to discharge an offender from all obligations imposed by the Governor's conditional pardon. *Costello*, 22 Wn.2d at 704. Recognizing that the statute dealt only with the Board's authority to parole, the Court held that the Board did not have the power to issue a final discharge to an offender, which would relieve the defendant from serving any conditions added by the governor to the offender's sentence or to nullify the governor's right to revoke the defendant's pardon for a violation of such conditions. *Costello*, 22 Wn.2d at 705.

The Court revisited the 1935 statute in *Scott v. Callahan*, 39 Wn.2d 801, 239 P.2d 333 (1951). The petitioner *Scott* had been sentenced to a term of not more than 15 years in prison. *Scott*, 39 Wn.2d at 802. After he served five years of his sentence, the Board released him on parole. *Scott*, 39 Wn.2d at 802. A year later, the Board issued a final discharge from supervision, releasing him from all obliga-

---

[1] The Indeterminate Sentence Review Board was formerly known as the Board of Prison Terms and Paroles. RCW 9.95.009(1).

tions imposed by parole. *Scott*, 39 Wn.2d at 802. Four years later, the Board revoked Scott's parole because he engaged in conduct specifically prohibited by conditions of his parole. *Scott*, 39 Wn.2d at 803. Scott brought a habeas corpus petition, alleging the Board lost jurisdiction over him when it entered the final discharge.

This Court affirmed the Board's continuing jurisdiction and its rescission of final discharge, holding that:

> [t]he Board has no power, statutory or otherwise, to affect his maximum sentence in any matter. Its power is limited to permitting a convicted person to leave the enclosure of the penitentiary after he has served a period of confinement fixed for him by the Board in accordance with [the statute].

*Scott*, 39 Wn.2d at 804. The Court observed that while the Board may discharge a parolee from parole conditions, the Board "cannot enlarge or extend the term fixed by the court's commitment, nor can it discharge a convict from custodia legis before the expiration of the maximum term for which he has been sentenced." *Scott*, 39 Wn.2d at 805 (citation and emphasis omitted) (citing *In re Writ of Mandamus of Wyback*, 32 Wn.2d 780, 203 P.2d 1083 (1949)). In other words, a final discharge was not the end of the sentence but rather the end of active supervision by the Board.

Against this backdrop, the Legislature enacted the final discharge statute, RCW 9.96.050. LAWS OF 1961, ch. 187, § 1. The former version of the statute stated in relevant part:

> When a prisoner on parole has performed the obligations of his release *for such time as shall satisfy* the Board of prison terms and paroles that his final release is not incompatible with the best interests of society and the welfare of the paroled individual, the Board *may* make a final order of discharge . . . to the prisoner: *Provided*, That no such order of discharge shall be made in any case within a period of less than one year from the date on which the board has conditionally discharged the parolee from active supervision by a probation and parole officer, except where the parolee's sentence expires earlier thereto.

Former RCW 9.96.050 (1961) (emphasis added.) Under the original version of the statute the Board had discretion to issue a final discharge from active parole, provided the discharge was entered at least one year following an order of conditional discharge from active supervision. *See* former RCW 9.96.050. Furthermore, the Board had continuing jurisdiction over a person released on conditional parole. *See Honore v. State Bd. of Prison Terms & Paroles*, 77 Wn.2d 697, 700, 466 P.2d 505 (1970) (holding that the Board does not lose jurisdiction by paroling a felon to the federal courts on a federal indictment, and that jurisdiction is retained until the expiration of the maximum sentence).

In 1993, the Legislature amended RCW 9.96.050, deleting the requirement of a one-year wait between the conditional and final discharge and providing that:

> If not earlier granted, the board shall make a final order of discharge three years from the date of parole unless the parolee is on suspended or revoked status at the expiration of the three years.

LAWS OF 1993, ch. 140, § 4.[2]

Quackenbush does not claim that the Board lacked authority to issue a final discharge from parole. Instead, the parties disagree on the import of a final discharge from parole. Quackenbush argues that a final discharge divests the Board of jurisdiction, and that the Board therefore did not have the power to rescind the final discharge and return him to prison. He contends that *Scott* is no longer controlling because the 1993 amendment extinguishes the Board's discretionary power by making the final discharge of all parolees automatic after three years, except for those who have had parole suspended or revoked. In other words, Quackenbush reasons, the Board was not exercising discretion when it issued the final discharge from parole; instead, the Board was executing its statutorily mandated duty to discharge him. Thus, he argues, a final discharge divests

---

[2] The Legislature has amended RCW 9.96.050 numerous times since it was originally enacted. The current version of RCW 9.96.050 took effect the day before the Board issued the final discharge from parole to Quackenbush.

the Board of power to revoke parole, even if an offender admits to committing acts prior to the final discharge which constitute violations of conditions of his parole.

The State responds that Quackenbush has confused a final discharge from parole with a reduction in sentence, and that the Board does not have the power to reduce sentences. The State relies only on cases that predate the 1993 amendment to RCW 9.96.050 for that proposition. We note, however, that this Court has consistently held that the Board lacks the power to reduce, increase, or otherwise alter the maximum sentence imposed by the trial court. *In re Personal Restraint of Ayers*, 105 Wn.2d 161, 167, 713 P.2d 88 (1986); *Honore*, 77 Wn.2d 697; *In re Writ of Habeas Corpus of Mason*, 42 Wn.2d 610, 615, 257 P.2d 211, *cert. denied*, 346 U.S. 901 (1953); *Scott*, 39 Wn.2d 801.

Statutory construction is a question of law which we review de novo. *State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999). Our principal duty is to "ascertain and give effect to the intent of the Legislature." *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999). The language of the amendment does not suggest that the Legislature intended a final discharge from parole to have the effect of terminating the court's sentence. The statute describes the effect of a final discharge: "[s]uch discharge, regardless of when issued, shall have the effect of restoring all civil rights" but "shall not restore the right to receive, process, own, or transport firearms." RCW 9.96.050. In the only reference to the maximum sentence or the Board's jurisdiction, the statute provides that "[t]he board retains the jurisdiction to issue a certificate of discharge *after the expiration of the prisoner's or parolee's maximum statutory sentence.*" RCW 9.96.050 (emphasis added). Rather than limiting the Board's jurisdiction, RCW 9.96.050 actually extends the Board's authority beyond its historic boundary, the expiration of the maximum sentence.

If the Legislature had intended to change something as

basic as the nature of a final discharge, it would have simply stated such a change as its objective. Merely removing discretion as to how long the Board can keep a conforming parolee under supervision does not indicate any Legislative intent to change the statute's meaning otherwise or to depart from the long-standing interpretation of the statute: final discharge is simply suspension of active supervision until the end of the maximum sentence. *Honore*, 77 Wn.2d at 700 (holding that parolee may be returned to the Board's custody for completion of the sentence); *Scott*, 39 Wn.2d at 804 (holding that the Board could not relinquish power over the parolee until expiration of the maximum sentence); *Costello*, 22 Wn.2d at 707 (holding that the Board did not have the power to issue a final discharge to an offender whose maximum sentence had not been served).

We will not step into the role of the Legislature and judicially alter the nature of a final discharge. *See Davis v. Dep't of Licensing*, 137 Wn.2d 957, 976 n.12, 977 P.2d 554 (1999) (the courts should not second-guess the wisdom of the Legislature in making policy decisions unless those decisions violate constitutional principles); *Millay v. Cam*, 135 Wn.2d 193, 203, 955 P.2d 791 (1998) (courts do not amend statutes by judicial construction).

The legislative history underlying the 1993 amendment, while scant, lends support to our conclusion. According to the Bill Report, the Board requested revisions to the parole scheme in order to make it more consistent with the Sentencing Reform Act of 1981 (SRA).[3] *See* SENATE COMM. ON LAW AND JUSTICE, S.B. REP. SB 5060 (Wash. Feb. 4, 1993). The SRA establishes a strict schedule of sentences for crimes depending on a variety of objective factors, rather than

---

[3] The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW changed the Washington sentencing scheme from primarily indeterminate sentences to determinate sentences. Generally, the SRA limits supervision after release from prison. For example, certain offenses are subject to one year supervision, whereas more serious offenses may be supervised for a maximum term of two years or the amount of earned early release time, whichever is longer. Under indeterminate sentencing, however, parole supervision may continue up to the maximum term for the crime.

allowing the Board to set minimums as it sees fit. According to a similar committee report in the House, the Board was concerned about the disparity in the different sentencing schemes; the SRA allows only for supervision of certain offenders after release from prison, whereas the indeterminate system requires much greater monitoring. *See* HOUSE COMM. ON CORRECTIONS, H.B. REP. SB 5060 (Wash. 1993). This report says in relevant part:

> If a parolee is found in one of the following circumstances a final order of discharge shall be entered by the board. Offenders on parole longer than three years who are not on suspended or revoked status will be discharged. Offenders on parole for up to three years, who are not on suspended or revoked status will be discharged as determined by the board. Parolees are not required to be on conditional discharge for one year prior to a final discharge order.

HOUSE COMM. ON CORRECTIONS, H.B. REP. SB 5060, at 2. While this history does not shed a great deal of light, it appears that the Legislature intended to reduce the number of offenders on parole to achieve some consistency with SRA sentencing provisions relating to supervision after release from prison. Also, while the 1993 amendment may have removed some of the Board's discretion in granting a final discharge, it is reasonable to conclude that the statutory change was also designed, in part, for administrative convenience; that is, offenders on parole for three years would not be required to remain on active supervision for life. We note that the Board is scheduled to go out of existence on June 30, 2008. RCW 9.95.0011(1). The limited legislative history tends to suggest that a final discharge from parole suspends the Board's active supervision, rather than terminating the sentence early.

Additionally, the Legislature was presumably familiar with this court's treatment of final discharge when amending the statute. *See Woodson v. State*, 95 Wn.2d 257, 261-62, 623 P.2d 683 (1980) ("the legislature is presumed to know the existing state of the case law in those areas in which it is legislating"). Our cases have consistently held that a final

discharge does not mean the end of the sentence, but merely the end of active supervision by the Board. *See Scott*, 39 Wn.2d at 805. Nowhere does the statute as amended say that a final discharge reduces the maximum sentence.

Quackenbush's interpretation of the final discharge statute would preclude the Board from correcting its own errors. Agencies have a limited right to reopen their final decisions. *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 743, 887 P.2d 891 (1995); *Hall v. City of Seattle*, 24 Wn. App. 357, 362, 602 P.2d 366 (1979). In *Hall*, the Court of Appeals relied upon a decision by the Minnesota Supreme Court:

> "Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it."

*Hall*, 24 Wn. App. at 362 (quoting *Anchor Cas. Co. v. Bongards Co-Op. Creamery Ass'n*, 253 Minn. 101, 106, 91 N.W.2d 122, 126 (1958)). An administrative agency has the authority to correct an obvious mistake when correction can be done promptly and fairly, even when the agency has made a final decision.[4]

In this case, Quackenbush was not eligible for final discharge because of the pending charges against him in California. Once the Board discovered these charges, it realized its error and promptly rescinded the discharge.

---

[4] At least as to prisoners for whom the three-year period had not already passed when the 1993 Amendment took effect, the Board can avoid the type of problem that occurred here by complying with RCW 9.95.140. That section directs the Board to "cause a complete record to be kept of every prisoner under the jurisdiction of the board released on parole" and to organize those records "in accordance with the most modern methods of filing and indexing so that there always will be immediately available complete information about each such prisoner." Better record keeping would not have helped here, however, because Quackenbush had already been on parole for more than three years when he was convicted of the new offenses in January 1993, and when the new statute took effect later that year. The Board's awareness of the California convictions when it granted his final discharge in June 1993 would not have altered that fact.

The language of the final discharge document emphasizes the Board's error:

> WHEREAS, It has further been made to appear that the said person, since so paroled, has performed in a satisfactory and acceptable manner and has given such evidence as to justify the belief that said person is trustworthy and reliable and will remain at liberty without violating the laws of this state or nation, and that the final release and discharge is compatible with the welfare of society . . . .

Quackenbush had not proved himself trustworthy and his release was not compatible with the welfare of society, as evidenced by his felonious behavior while on parole in California. Under such circumstances, the Board had authority to correct its obvious error.

## CONCLUSION

Under RCW 9.96.050, the term "final discharge from parole" means discharge from active supervision by the Board. The Board had the power to rescind the final discharge that it had issued in error. The Court of Appeals is affirmed.

IRELAND and BRIDGE, JJ., and GUY and TALMADGE, JJ. Pro Tem., concur.

JOHNSON, J. (dissenting) — The majority confuses the issue in this case, misconstrues a statute that is clear on its face, and judicially expands the authority of the Indeterminate Sentence Review Board (Board) when the Legislature has restricted its power. I dissent.

The majority suggests RCW 9.96.050 grants the Board continuous jurisdiction over a parolee, including the power to revoke a person's discharge up until the end of the maximum sentence. It supports this position with cases that predate the statute at issue here, ignoring the statutory changes that have taken effect since those cases were decided. In doing so, the majority disregards the fact the

Board is a legislatively created body and has only that authority specifically granted to it by the Legislature, which is the decisive factor in this case.

The Legislature may limit the Board's authority at any time. That is exactly what RCW 9.96.050 does. This statute provides:

> When a prisoner on parole has performed the obligations of his or her release for such time as shall satisfy the indeterminate sentence review board that his or her final release is not incompatible with the best interests of society and the welfare of the paroled individual, the board may make a final order of discharge and issue a certificate of discharge to the prisoner. The board retains the jurisdiction to issue a certificate of discharge after the expiration of the prisoner's or parolee's maximum statutory sentence. *If not earlier granted, the board shall make a final order of discharge three years from the date of parole unless the parolee is on suspended or revoked status at the expiration of the three years. Such discharge, regardless of when issued, shall have the effect of restoring all civil rights* lost by operation of law upon conviction, and the certification of discharge shall so state. This restoration of civil rights shall not restore the right to receive, possess, own, or transport firearms.

RCW 9.96.050 (emphasis added). The majority suggests this language can somehow be interpreted to say that the Board's final discharge is always conditional and revocable up until the maximum sentence expires. Yet, there is no language in RCW 9.96.050 granting the Board the authority to place conditions on final discharge. In fact, the statute specifically limits the Board's authority over a parolee to three years unless that person's parole has been suspended or revoked.

Regarding the statutory language, the majority relies upon one sentence in particular: "[t]he board retains the jurisdiction to issue a certificate of discharge after the expiration of the prisoner's or parolee's maximum statutory sentence." RCW 9.96.050; *see* majority at 934. Taking this out of context, the majority suggests this sentence demonstrates a legislative intent to broaden the Board's power,

enabling the Board to independently return a person into custody at any time before the maximum sentence has expired. Yet, the majority reads too much into this one sentence and, in doing so, fundamentally alters other provisions of the statute. Nowhere in the statute does the Legislature indicate that, after issuing a final discharge order, the Board has any authority to do anything more than issue a certificate of discharge upon the expiration of the maximum sentence.

RCW 9.96.050 refers to both certificates of discharge and final orders of discharge. The functional distinction between these two documents is significant. Certificates of discharge are used to signify the expiration of a maximum sentence. The Legislature has granted both sentencing courts and the Board the authority to issue certificates of discharge when an offender has completed the requirements of his or her sentence. RCW 9.94A.220; RCW 9.96.050. A final order of discharge, on the other hand, has only the effect of releasing a parolee from the custody of the Board. The final order of discharge does not effectively release an offender from his or her obligation of serving the maximum sentence set by the Legislature and imposed by the sentencing court.

In RCW 9.96.050, the Legislature directs the Board to issue an order of final discharge after three years unless the person's sentence is suspended or revoked. With a final order of discharge, the Board releases the person from any further obligations owed to it.[5] The only authority retained by the Board after the issuance of a final discharge order is the granting of a certificate of discharge. Any other reading judicially extends the power of the Board beyond that contemplated by the statute. Once the Board issues the final discharge order, there is nothing in the statute granting the Board the authority to independently revoke that

---

[5] The offender, however, is still under the sentence of the trial court even after the Board issues a final order of discharge. In the event the Board issues an erroneous final order of discharge, presumably the sentencing court still retains jurisdiction to provide a remedy.

order, strip a person of his or her fully restored civil rights, and reassert custody over that person.

The language in Quackenbush's final order of discharge also supports such a reading of the statute. The final order of discharge issued in this case states that the Board "release[s] and discharge[s] [Quackenbush] from any further or other punishment, penalty, or obligation by reason of said crime and restore[s] all civil rights forfeited by reason of this and prior convictions and confinements . . . ." Mot. for Discretionary Review Ex. D.[6] Nowhere in this final order does the Board state that it retains authority over Quackenbush to rescind his civil rights and return him to custody. No conditions were placed upon Quackenbush. This language is consistent with the statutory mandate that the Board discharge him.

The majority's opinion is largely dependent on the continuing viability of this court's opinion in *Scott v. Callahan*, 39 Wn.2d 801, 239 P.2d 333 (1951). However, *Scott* is from a different era and interprets a different statute. The enabling statute the Board of Prison Terms and Paroles (Board of Prison Terms) was acting under in 1951 specifically stated that the Board of Prison Terms " 'shall also have the power to return such person to the confines of the institution from which he or she was paroled, at its discretion.' " *Scott*, 39 Wn.2d at 805 (emphasis omitted) (quoting former REM. REV. STAT. § 10249-4 (Supp. 1947)). Under that statute, this court interpreted the language as placing an affirmative duty on the Board to exercise its discretion and return a person to prison prior to the expiration of the maximum sentence if it determined that would be in the best interests of society. The statutory language at issue

---

[6] This stands in direct contrast to the situation presented in *Scott v. Callahan*, 39 Wn.2d 801, 239 P.2d 333 (1951). Unlike here, Scott's final discharge order specifically stated he was released only " 'from any further obligation imposed upon him as a condition of his said parole.' " *Scott*, 39 Wn.2d at 802 (emphasis omitted) (quoting Final Discharge from Supervision). It did not release him "from any further or other punishment, penalty, or obligation by reason of said crime," as is the case here. On its face, Scott's final discharge discharged him only from parole. Quackenbush's discharge was broader. The majority fails to note this factual distinction, wrongly applying *Scott* as if it were factually analogous.

here does not grant the same amount of discretion. Today, the Board is statutorily obligated to discharge a person if the specified conditions of his or her parole are met.[7]

Under the current statute, the Legislature has restricted the Board's powers. The plain language of RCW 9.96.050, which defines and limits the Board's power, cannot be read to grant authority to the Board to act after issuance of a final discharge order. I would grant the personal restraint petition and find the Board has no independent authority to return Quackenbush to custody after issuing him a final order of discharge.

ALEXANDER, C.J., and SMITH and SANDERS, JJ., concur with JOHNSON, J.

---

[7] The majority also cites *Scott* for the proposition that only the Legislature, and not the Board, has the power to set, reduce, or increase sentences. *See* majority at 932. While this *is* true, that *does not mean* the Board can simply ignore the limitations expressly placed upon it by the Legislature. In RCW 9.96.050, the Legislature indicates the Board no longer has authority to carry out the sentence after a final discharge order.