74 P.3d 134 (2003)
150 Wash.2d 29
In re the Personal Restraint Petition of Michael W. ROACH.
No. 73374-1.
Supreme Court of Washington, En Banc.
Argued May 13, 2003.
Decided August 14, 2003.
*135 James Foley, Olympia, for Petitioner/Appellant.
Christine Gregoire, Attorney General, Gregory Rosen, Assistant Attorney General, for Appellee/Respondent.
MADSEN, J.
Petitioner Michael W. Roach seeks review of an unpublished Court of Appeals opinion dismissing his personal restraint petition. Roach contends that he is entitled to credit against his sentence for time he spent at liberty due to the negligence of the Washington State Department of Corrections (DOC) in releasing him prior to the completion of his sentence. We agree and adopt an equitable doctrine of relief for a prisoner released from state custody due to the State's negligence. An erroneously released prisoner will be granted day-for-day credit against his sentence for time spent at liberty, provided that he did not contribute to his erroneous release and while at liberty, he did not abscond any remaining legal obligations and had no criminal convictions.
On the record in this case, we find Roach is entitled to day-for-day credit against his remaining sentence. Accordingly, we reverse the Court of Appeals.

FACTS
On September 18, 1998, Roach was sentenced in Thurston County Superior Court, receiving a 13 month sentence in Cause No. 98-1-00950-4 for trafficking in stolen property in the first degree and a 31 month sentence in Cause No. 98-1-01540-7 for burglary in the first degree, theft of a firearm, and trafficking in the first degree. The judgments and sentences in both cases indicated that Roach was to serve the sentences concurrently. However, on May 3, 1999, after Roach completed his 13 month sentence and before he completed the remaining 18 months of his 31 month sentence, the DOC released him from its custody. According to the record,[1] Roach reported to the Washington Corrections Center (WCC) the day following his release, but the record does not indicate the nature of that contact. Based on the documents submitted to this court, it appears that Roach was released without further legal obligations.
On May 13, 1999, 10 days after Roach's release, the DOC realized its mistake in prematurely releasing Roach on Cause No. 98-1-01540-7. Authorities issued a warrant for his arrest, and officers attempted to locate him at his listed residence. Officers did not find Roach at home and left a card directing that he report to the DOC immediately. The Yelm and Lacey Police Departments were notified of Roach's erroneous release, as well. The DOC, however, was unsuccessful in contacting Roach. Apparently Roach moved to Indiana sometime between the day of his release and the day the DOC recognized its mistake.
In April 2002, almost three years later, Roach was stopped for a traffic violation in Indiana and then arrested on a Thurston County warrant dated May 13, 1999. It appears that Indiana released Roach after this initial arrest, and on June 10, 2002, Washington responded with the issuance of a Governor's Warrant for Roach's arrest. Before the warrant was served, Roach surrendered to Indiana authorities for extradition to Washington.
After extradition, the Thurston County Sheriff's Office investigated the circumstances surrounding Roach's erroneous release. DOC concluded that the Thurston County Jail's intake area likely never received the court documents to properly process and transition Roach to the DOC under Cause No. 98-1-01540-7. The jail's records indicated only that Roach was held on Cause No. 98-1-00950-4 "along with a criminal matter out of the Thurston County District Court."[2] Thus, DOC concluded that it never received notice of the 31 month sentence.
In addition, Roach's "Offender Based Tracking System Report" only referenced his incarceration in Cause No. 98-1-950-4. *136 Roach's "Offender Chrono Report" dated August 9, 2002, however, does indicate that the judgments and sentences under both cause numbers were forwarded to the WCC on October 29, 1998.
After his return to Washington, Roach moved for review of his sentence in Thurston County Superior Court. The court held that it no longer had jurisdiction and ordered that the matter be transferred to the Court of Appeals. Roach filed a personal restraint petition in the Court of Appeals on September 11, 2002, arguing for application of the equitable doctrine of credit for time spent at liberty as recognized by the Ninth Circuit in United States v. Martinez, 837 F.2d 861 (9th Cir.1988). He additionally claimed that his erroneous release and subsequent re-incarceration violated due process. The Court of Appeals dismissed the petition. In re Pers. Restraint of Roach, No. 29305-6-II (Wash. Ct.App. Nov. 21, 2002). The court found that no Washington court has adopted the federal common law doctrine of credit for time at liberty. The court also held that Roach failed to show that the DOC acted with gross negligence, as required to prove a due process violation. Id. slip op. at 2 (citing Green v. Christiansen, 732 F.2d 1397, 1399 (9th Cir.1984); Johnson v. Williford, 682 F.2d 868, 873 (9th Cir.1982)).
This court granted review.[3]

ANALYSIS
Whether to adopt the equitable doctrine of credit for time at liberty presents an issue of first impression in Washington. However, many federal and state courts have addressed whether principles of equity require that the sentence of a mistakenly released prisoner be credited with time spent out of custody. E.g., Clark v. Floyd, 80 F.3d 371 (9th Cir.1996); Dunne v. Keohane, 14 F.3d 335 (7th Cir.1994); Martinez, 837 F.2d 861; Kiendra v. Hadden, 763 F.2d 69 (2d Cir. 1985); Green, 732 F.2d 1397; Smith v. Swope, 91 F.2d 260 (9th Cir.1937); White v. Pearlman, 42 F.2d 788 (10th Cir.1930); McCall v. State, 594 So.2d 733 (Ala.Crim. App.1992); McKellar v. Ariz. State Dep't of Corrections, 115 Ariz. 591, 566 P.2d 1337 (1977); see also Gabriel J. Chin, Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty, 45 Cath. U.L.Rev. 403 (1996). In these decisions, courts have moved away from a strict application of the traditional rule requiring a released prisoner to serve his full sentence no matter the circumstances of his release, e.g., United States v. Loisel, 25 F.2d 300 (5th Cir.1928) (denying credit for delay in execution of sentence); Leonard v. Rodda, 5 App. D.C. 256 (1895) (denying credit for time erroneously released), and have granted an erroneously released prisoner relief based on principles of equity and fairness.
The Tenth Circuit in Pearlman, 42 F.2d at 789, was the first court to credit a released prisoner's sentence for time erroneously spent at liberty. In Pearlman, the court held "that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty." Id. The court reasoned:
A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under a strict rule ... a prisoner sentenced to five years might be released in a year, picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back.
Id.
Courts have examined the governing principles of Pearlman and have identified two bases for granting relief to an erroneously released prisoner; one is rooted in equity, the other in the due process clause. Courts granting equitable relief grant day-for-day credit against a sentence for time spent at *137 liberty where the government mistakenly released a prisoner through inadvertence or mere negligence. E.g., Clark, 80 F.3d at 374; Dunne, 14 F.3d at 336 (credit not granted on facts); Martinez, 837 F.2d at 865; Kiendra, 763 F.2d at 73; Green, 732 F.2d at 1400; Swope, 91 F.2d at 262; Pearlman, 42 F.2d at 789; McCall, 594 So.2d 733; McKellar, 115 Ariz. at 593-94, 566 P.2d 1337.
Courts granting relief as a matter of due process clause analyze whether reincarceration after an erroneous release violates the convicted person's due process rights. The remedy is a complete exoneration of the remainder of the sentence. Courts have found due process violations where the government's conduct in releasing the prisoner amounted to gross negligence and the prisoner was at liberty for a long period of time. E.g., Johnson, 682 F.2d at 873; United States v. Merritt, 478 F.Supp. 804, 807-08 (D.D.C.1979); Piper v. Estelle, 485 F.2d 245, 246-47 (5th Cir.1973); Shields v. Beto, 370 F.2d 1003, 1005 (5th Cir.1967); Derrer v. Anthony, 265 Ga. 892, 463 S.E.2d 690, 693-94 (1995); Brown v. Brittain, 773 P.2d 570, 575 (Colo.1989); In re Messerschmidt, 104 Cal.App.3d 514, 163 Cal.Rptr. 580, 581 (1980).
In this case, Roach argues for the adoption and application of the equitable doctrine as constructed by the Ninth Circuit. Martinez, 837 F.2d at 865 (citing Green, 732 F.2d at 1400; Swope, 91 F.2d at 262; Pearlman, 42 F.2d at 789). Under "the doctrine of credit for time at liberty," the Ninth Circuit grants a convicted person credit against his sentence for time spent at liberty due to "simple or mere negligence on behalf of the government" and "provided the delay in execution of sentence was through no fault of [the convicted person]." Martinez, 837 F.2d at 865. Roach argues that the doctrine applies here because the DOC acted negligently in releasing him before the completion of his sentence, and he did not contribute to the erroneous release. Roach was at liberty from May 3, 1999 until April 2002, approximately 35 months. To credit his sentence with this time at liberty would complete his service; thus, rendering his current incarceration unlawful.
The Ninth Circuit first applied equitable relief of day-for-day credit for time at liberty in the case of Green, 732 F.2d at 1400. In that case, Green was convicted of both federal and California State crimes and placed in California's custody to serve the federal and state sentences concurrently. Id. at 1398. The federal marshal did not place a hold on Green. Id. Thereafter, Green was paroled from the custody of California on the state conviction and successfully completed state parole. Id. Two years later, federal authorities discovered that Green had been released before completing his federal sentence and caused Green to be arrested on an escape warrant. Id. at 1399. He was incarcerated in a federal correctional facility for service of the remainder of his federal sentence. Id. at 1398-99.
On appeal, the Ninth Circuit held Green was entitled to credit against his federal sentence for his time spent at liberty. Id. at 1400. Relying on the principles of Pearlman, the court reasoned that the government had led Green to believe that he had completed his parole and was completely at liberty, and accordingly, "simple fairness" justified crediting his sentence. Id. The court concluded that an offender will receive "full credit for the time that he spent at liberty through the inadvertence of agents of the government and through no fault of his own." Id.
Four years later, the Ninth Circuit reiterated the equitable rule in Martinez, stating:
Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own.
837 F.2d at 865 (citing Green, 732 F.2d at 1400; Swope, 91 F.2d at 262; Pearlman, 42 F.2d at 789) (holding equitable claim premature as offender had not exhausted administrative remedies). The Ninth Circuit most recently applied the doctrine in Clark v. Floyd, 80 F.3d 371, 374 (9th Cir.1996), holding the offender was entitled to credit for time erroneously at liberty.
*138 The DOC contends that Washington has not adopted the federal doctrine, however, and that reincarcerating Roach for service of the remainder of his lawful sentence does not place him under an unlawful restraint. Further, the DOC argues that the laws of Washington authorize the State to reincarcerate Roach and that the doctrine of credit for time at liberty conflicts with Washington's laws. The DOC cites RCW 9.94A.625(1) and 9.31.090 as authority for reincarcerating Roach.
RCW 9.94A.625(1) provides that "[a] term of confinement ... shall be tolled by any period of time during which the offender has absented himself or herself ... without the prior approval of the entity in whose custody the offender has been placed." RCW 9.94A.625(1) does not apply here. Roach did not absent himself from custody without prior approval; rather, authorities released Roach on their own accord. RCW 9.31.090, likewise, does not apply. It provides that a person "who shall escape from custody, may be recaptured and imprisoned for a term equal to the unexpired portion of the original term." RCW 9.31.090. Roach did not escape from custody.
Additionally, the DOC argues that it does not have the authority to pardon Roach or to shorten his sentence. Honore v. Wash. State Bd. of Prison Terms & Paroles, 77 Wash.2d 697, 700, 466 P.2d 505 (1970) (holding prisoner "remains in custodia legis and amenable to the duly entered judgment and sentence of a court" unless absolutely pardoned by the Governor, the prisoner dies prior to expiration of sentence, or the sentence expires). Thus, he remains amenable to the judgment and sentence in this case and may be reincarcerated.
The DOC is correct that the laws of Washington do not prevent the State from reincarcerating Roach for service of the remainder of his lawful sentence. The laws, however, do not answer the question of whether, under an equitable theory, Roach receives credit against his sentence for time spent at liberty due to the State's mistake. We are persuaded that fairness and equity require this court to join the federal courts and sister states that have answered that question in the affirmative. We, therefore, hold that a convicted person is entitled to credit against his sentence for time spent erroneously at liberty due to the State's negligence, provided that the convicted person has not contributed to his release, has not absconded legal obligations while at liberty, and has had no further criminal convictions. Thus, an erroneously released prisoner's subsequent conduct is relevant to whether equitable relief will be granted.
In Roach's case, the record demonstrates that the DOC acted negligently in releasing Roach prior to the completion of his sentence, and that Roach did not contribute to his release in any way. Further, it appears from the record that the DOC released Roach unconditionally, and accordingly, Roach did not abscond legal obligations while at liberty. Finally, during the three years Roach was at liberty, he had no criminal convictions. Thus, we hold Roach is entitled to the equitable relief of day-for-day credit against his sentence for the time he was at liberty.
Roach additionally argues that his release and subsequent reincarceration violate the due process clause of the Fourteenth Amendment, Johnson, 682 F.2d at 873, and that the delay in execution of his sentence violates his right to speedy trial. U.S. Const. amend. 6; Const. art. I, § 22. Having found Roach entitled to the equitable relief of credit toward his sentence, we decline to address his constitutional arguments.

CONCLUSION
We reverse the Court of Appeals and grant Roach day-for-day credit against his sentence for the time he spent at liberty.
ALEXANDER, C.J., JOHNSON, SANDERS, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ., concur.
CHAMBERS, J. (concurring).
I concur with my colleagues' adoption of the equitable doctrine of credit for time at liberty. I also concur that the doctrine is properly applied here and join the court in ordering that Michael Roach be granted day *139 for day credit against his sentence for the time he was at liberty. However, because Roach's knowledge of the State's mistake was not an issue brought before us, the court had no occasion to consider the potential sweep of this doctrine. I write separately to urge adoption of a limiting principle in the future.
Those tried and convicted of crimes owe a debt to society. Society is entitled to have that debt paid. Credit for time erroneously at liberty is an equitable doctrine and should be applied only where equity demands its application.
I agree with the majority that a prisoner who contributed to the erroneous release, or who has not remained lawfully at liberty, is not entitled to relief under this equitable doctrine. I write separately to elaborate upon the analysis to be followed when determining whether a prisoner contributed to or attempted to correct the mistake. The doctrine should not be applied if the State can establish by clear, cogent and convincing evidence that the prisoner either contributed to the error or knew of it and failed to call it to the attention of authorities.
Instructive is White v. Pearlman, 42 F.2d 788 (10th Cir.1930). White, the warden, informed Pearlman, a prisoner, that he had served his sentence and was due for release. Pearlman correctly believed he had not completed his sentence, and told the warden there had been some mistake. White, 42 F.2d at 789. Pearlman's concerns were brushed aside and he was effectively ejected from the penitentiary. Id. When the mistake was discovered, he voluntarily returned to serve the balance of his sentence, but sought credit for the time he was at liberty in a habeas corpus petition. The court granted his habeas petition, ruling:
where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of the conditions of parole ... his sentence continues to run while he is at liberty.
White, 42 F.2d at 789.
This rule properly balances the equities. A prisoner released without contributing fault, either because of ignorance or because of diligence in calling the government's mistake to the attention of the responsible authorities, should not be effectively penalized by being required to return to prison to correct the government's mistake. E.g., Brown v. Brittain, 773 P.2d 570, 574-75 (Colo.1989); In re Messerschmidt, 104 Cal. App.3d 514, 163 Cal.Rptr. 580, 581-82 (1980). Just as society is entitled to have the debt paid, the prisoner is entitled to pay his or her debt to society, "re-establish himself and live down his past." White, 42 F.2d at 789.
Where it is clear that a prisoner had knowledge of a government mistake and made no effort to correct it, equity does not demand credit for time at liberty. However, making the defendant's knowledge a central inquiry in every case would be unfair to defendants who are theoretically chargeable with knowledge of the terms and conditions of their sentence. Given our complex and ever changing sentencing regimes and the availability of earned release time, work release, paroles, pardons, and commutations, prisoners should be able to rely upon the authorities to calculate their sentences accurately. They should be able to rely upon prison officials when they are told they can leave. I would therefore put the burden upon the State to prove by clear, cogent and convincing evidence, completely independent of sentencing hearings and documents, that the prisoner was aware at the time that he or she had been erroneously released, and yet remained silent.
To summarize, I suggest the following criteria and limitations. A prisoner erroneously released may seek application of the equitable doctrine of credit for time at liberty. First, I would apply the doctrine only when time in custody was interrupted after the prisoner had commenced serving the sentence or sentences. Second, the prisoner's hands must be clean to seek equitable relief, and therefore he or she must not have committed any criminal acts while erroneously at liberty which result in conviction. Finally, the prisoner is not entitled to credit for time served while at liberty if the State is able to prove, with evidence independent of the prisoner's sentencing hearing or sentencing documents, that the prisoner knew of the mistake *140 and failed to attempt to call it to the attention of the appropriate authorities.
Since the State has not raised the issue of whether Roach contributed to the error that caused his release, and since he remained lawfully at liberty, I respectfully concur.
NOTES
[1] Ex. 3, Personal Restraint Pet. (Offender Chrono Report, Aug. 9, 2002, Michael W. Roach, DOC No. 787291).
[2] Ex. 2, Personal Restraint Pet. (Letter by Captain Todd Thomas, dated Aug. 8, 2002).
[3] Because Roach would complete his sentence before the publication of this opinion, following oral arguments, the court ordered that Roach be immediately released from the DOC, with this opinion to follow.