134 P.3d 261 (2006)
STATE of Washington, Respondent,
v.
Jeff L. DALSEG, Appellant.
State of Washington, Respondent,
v.
Timothy M. Cestnik, Appellant.
Nos. 33101-2-II, 33102-1-II.
Court of Appeals of Washington, Division 2.
May 9, 2006.
As Amended on Denial of Reconsideration July 5, 2006.
*262 John Thomas Doherty, Jr., Tacoma, Suzanne Lee Elliott, Seattle, for Appellants.
Monty Dale Cobb, Michael K Dorcy, Mason County Prosecutors Office, Shelton, for Respondents.
HOUGHTON, P.J.
¶ 1 In this consolidated appeal, Jeff Dalseg and Timothy Cestnik challenge the trial court's decision to deny them credit for time served in the Nisqually Tribal Jail "work release" program. After the men had served more than 11 months of a 12-month work release sentence in the Nisqually program, the State learned that the program did not comply with the statutory requirements for work release and asked the court to order Dalseg and Cestnik to begin serving their sentences in one that did. The trial court agreed, denying the men credit for any time served. We reverse and remand, holding that Dalseg and Cestnik are entitled to day-for-day credit for time served in the Nisqually "work release" program under the equitable doctrine of credit for time served at liberty.

FACTS
¶ 2 Dalseg pleaded guilty to two counts of conspiracy to manufacture a controlled substance (marijuana) and one count of money laundering. Cestnik pleaded guilty to one count of each crime. As part of their plea agreement, the State agreed to recommend a work release sentence.
¶ 3 On April 8, 2004, the trial court sentenced Dalseg and Cestnik each to 12 months' incarceration on each count, to be served concurrently, followed by 12 months of community custody.[1]
¶ 4 Accepting the State's recommendation, the trial court permitted Dalseg and Cestnik to serve their sentences on work release. Under the heading "partial confinement," the trial judge checked the box for "work release RCW 9.94A.731" (the form also has boxes for two other forms of partial confinement, work crew and home detention). Dalseg's Clerk's Papers (CP) at 17; Cestnik's Clerk's Papers (CP) at 17.
¶ 5 Dalseg's judgment and sentence included the handwritten statement: "Confinement may be served in work release if proof of enrollment filed with ct. by 5.6.04, & defendant to report to [Mason County] Jail on or before that date . . . . Thurston County Jail or Nisqually Jail (Work Release)." Dalseg CP at 17. Cestnik's judgment and sentence included the handwritten statement, "defendant shall report to the Mason County Jail on or before May 6, 2004 if not enrolled in Work Release by that date, with proof filed w/ct. . . . Work Release Program at Nisqually and Thurston Co. [illegible] are specifically authorized by the court." Cestnik CP at 17.
¶ 6 Mason County has no work release facility, and the Thurston County Jail had no space open at the time. Thurston County referred Dalseg and Cestnik to the Nisqually Tribal Jail work release program.
¶ 7 Dalseg and Cestnik entered the Nisqually program in April 2004. They signed a contract with the Nisqually Corrections Work Release Division titled, "Work Release Agreement and Rules." Supp. CP. They also agreed to pay $20 per day and to comply with all the terms and conditions of the program.
¶ 8 On May 5, 2004, the Nisqually Corrections Director, Lieutenant Barry Thoms, sent a letter to the Mason County prosecutor confirming Dalseg and Cestnik's enrollment in the Nisqually work release program. The letter states:
I have been requested to send you a confirmation letter concerning Mr. Timothy M. Cestnik and Mr. Jeff L. Dalseg. These two individuals are enrolled in the Nisqually Corrections Work Release Program.
Mr. Cestnik . . . enrolled into the Program on April 19, 2004 and is up to *263 date on payments. He is following all instructions and requirements by contract.
Mr. Dalseg . . . enrolled into the Program on April 15, 2004 and is up to date on payments. Mr. Dalseg is also following instructions and requirements of the contract.
If you have any questions, concerns, or further conditions please contact me at. . . .
Supp. CP.
¶ 9 The State accepted the letter and work release contract as adequate proof of enrollment in work release. Our review of the superior court docket reveals that the State stipulated to continuing a May 2004 review hearing on Dalseg and Cestnik's work release enrollment. SCOMIS,[2] Mason County Cause Nos. 03-1-00039-6 and 03-1-00038-8.
¶ 10 Dalseg and Cestnik reported to the Nisqually Jail each morning and evening and otherwise complied with all Nisqually work release program conditions. Dalseg worked at Lilliwaup Bay Builders, and Cestnik drove a truck for a Tenino trucking company.
¶ 11 In March 2005, a Mason County detective learned that Dalseg and Cestnik reported to the Nisqually Jail every morning and evening but returned home overnight. Based on this information, the Mason County prosecutor asked the court to enforce the judgment and sentences, alleging that Dalseg and Cestnik were not enrolled in an authorized work release program. On April 4, 2005, the court held a show cause hearing.
¶ 12 At the time of the hearing, Dalseg and Cestnik had completed more than 11 months in the Nisqually work release program, at an approximate cost of $7,000 each.
¶ 13 Lieutenant Thoms of the Nisqually Police Department testified that Thurston County and seven or eight tribes in the state recognize the Nisqually Tribal Jail as a legal detention facility. He stated that the Nisqually Tribal Jail has two types of work release programs: a day reporting program in which a person checks in each morning and evening; and partial confinement, where a person is released for work but otherwise stays in the jail. When asked how he determines which type of program applies, Thoms said that he asks prosecutors to put it on the judgment and sentence, but "[i]f it's not written down on there . . ., it's our choice." Report of Proceedings (RP) at 33.
¶ 14 The Mason County prosecutor testified that, before the show cause hearing, he did not know that the Nisqually Tribal Jail had two types of work release programs. He said that if he had known that a Nisqually corrections officer enrolled Dalseg and Cestnik in a day reporting program rather than "classic work release," he would have immediately alerted the court that the program did not satisfy the judgment and sentences. RP at 37. He said that he negotiated the plea agreements "with a classical understanding of work release being [a] night in jail, day at work." RP at 38.
¶ 15 Cestnik's counsel testified that he arranged for Dalseg and Cestnik's enrollment in the work release program after receiving assurances from Thoms that the Nisqually Tribal Jail ran an approved work release program. Defense counsel said that he asked the Mason County prosecutor to "check out the program and put his approval on it and make sure that he was satisfied with it." RP at 42. The Mason County prosecutor verbally approved the program and agreed to include it on the judgment and sentences.
¶ 16 Thus, neither defense counsel nor the prosecutor knew that the Nisqually Tribal Jail had two forms of "work release," a day reporting program and partial confinement.
¶ 17 On April 4, 2005, the court ordered Dalseg and Cestnik to "serve sentence as originally ordered in an RCW 9.94A Work Release Program and show proof of enrollment by Monday, April 11, 2005. Such program shall be one of partial confinement (nights to be spent in custody) and not one of day reporting or some version thereof." Cestnik CP at 5; see also Dalseg CP at 5.
¶ 18 In denying credit for time served, the trial court stated that it had only reluctantly agreed to work release in the first place, in view of the scale of Dalseg's and *264 Cestnik's criminal activity. The court said that any fault lies with "the Nisquallies . . . for running them into the wrong program and having them in the wrong program for the period of time, I think that's where the equity lies, . . . not with the imposition of what would be . . . a wholly inappropriate sentence." RP at 53.
¶ 19 Dalseg and Cestnik appeal. The trial court stayed its order pending the outcome of their appeal.

ANALYSIS
¶ 20 Dalseg and Cestnik advance statutory, constitutional, and equitable grounds for reversing the trial court's ruling. First, they argue that the trial court exceeded its statutory authority by modifying the sentences. Next, they argue that the trial court imposed an exceptional sentence in violation of their constitutional right to a jury trial, citing Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Finally, they argue that equity demands they receive credit for time served in the Nisqually work release program. We reject Dalseg and Cestnik's statutory argument but agree that equity entitles them to relief. Because we hold that Dalseg and Cestnik are entitled to relief on equitable grounds, we do not address their constitutional claim.

NONCOMPLIANCE WITH SENTENCE
¶ 21 Dalseg and Cestnik characterize the trial court's order as an impermissible modification of the sentence. We disagree with their characterization.
¶ 22 A court can only modify a sentence as authorized by statute. State v. Shove, 113 Wash.2d 83, 89, 776 P.2d 132 (1989). A trial court may not modify a sentence merely because it appears, with hindsight, that the original sentence was inappropriate. Shove, 113 Wash.2d at 88, 776 P.2d 132. But when an offender violates any requirement of a sentence, the trial court retains broad discretion to modify the sentence and/or impose additional punishment. RCW 9.94A.634(1); State v. Woodward, 116 Wash.App. 697, 703, 67 P.3d 530 (2003). If the State proves, by a preponderance of the evidence, that the offender violated the sentence, the trial court "may impose sanctions such as work release, home detention with electronic monitoring, work crew, community restitution, inpatient treatment, daily reporting, curfew, educational or counseling sessions, supervision enhanced through electronic monitoring, jail time, or other sanctions available in the community." RCW 9.94A.634(3)(a)(i), (c)(iv).
¶ 23 Alternately, the trial court may convert any term of partial confinement to total confinement. RCW 9.94A.634(3)(c)(i). We review the trial court's ruling on the appropriate sanction for a violation of the sentence under the abuse of discretion standard. Woodward, 116 Wash.App. at 703, 67 P.3d 530.
¶ 24 Here, the original judgment and sentences required Dalseg and Cestnik to serve their sentences in partial confinement. Partial confinement is
confinement . . . in a facility or institution operated or utilized under contract by the state or any other unit of government, or, if home detention or work crew has been ordered by the court, in an approved residence, for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release, home detention, work crew, and a combination of work crew and home detention.
RCW 9.94A.030(32) (formerly (31)).[3]
¶ 25 Here, Dalseg and Cestnik's judgment and sentences specifically authorize "work release" in accordance with RCW 9.94A.731. Under that provision, an offender "shall be confined in the [work release] facility for at least eight hours per day." RCW 9.94A.731(1).
¶ 26 No one disputes that the Nisqually Tribal Jail did not confine Dalseg and Cestnik for any period of the day. Thus, because they violated their sentences, the trial court *265 had discretion to modify the sentences and/or impose additional sanctions under RCW 9.94A.634.
¶ 27 Dalseg and Cestnik argue that because the judgment and sentences specifically authorized them to serve their sentences at the Nisqually Tribal Jail, they did not violate their sentences. We disagree.
¶ 28 The trial court's specific authorization of the Nisqually work release program is not inconsistent with the requirement that Dalseg and Cestnik serve their sentences in partial confinement. The Nisqually program includes both partial confinement and day reporting. The statute defines day reporting as "a program of enhanced supervision designed to monitor the offender's daily activities and compliance with sentence conditions, and in which the offender is required to report daily to a specific location designated by the department or the sentencing court." RCW 9.94A.030(16) (formerly (15)).
¶ 29 In contrast, work release is "a program of partial confinement available to offenders who are employed or engaged as a student in a regular course of study at school." (RCW 9.94A.030(51) (formerly 48)). Read as a whole, the judgment and sentences authorize Dalseg and Cestnik to serve their sentences in the Nisqually Tribal Jail's partial confinement program, not its day reporting program.
¶ 30 Because the Nisqually day reporting program does not meet the requirements for work release as set forth in the judgment and sentences, the trial court did not exceed its statutory authority by requiring Dalseg and Cestnik to enroll in one that does.

EQUITABLE RELIEF
¶ 31 Holding that the trial court had authority under the sentencing statute to order Dalseg and Cestnik to serve their sentences in a statutorily-compliant work release program, we next consider whether the trial court erred in denying them equitable relief. We conclude that it did. Equity entitles Dalseg and Cestnik to credit for time served in the Nisqually program under the doctrine of "credit for time spent at liberty." Appellants' Brief at 8.
¶ 32 Our Supreme Court adopted the equitable doctrine of credit for time spent at liberty in In re Pers. Restraint of Roach, 150 Wash.2d 29, 74 P.3d 134 (2003). Roach involved a prisoner erroneously released from Department of Corrections (DOC) custody after he had served only the lesser of two concurrent sentences. 150 Wash.2d at 31, 74 P.3d 134. The erroneous release apparently resulted from an incomplete transfer of his sentencing records from the county jail to DOC. Roach, 150 Wash.2d at 32, 74 P.3d 134. DOC discovered the error 10 days later and attempted to re-apprehend Roach, but he had left the state. Almost three years later, Indiana extradited Roach to Washington to serve the remainder of his sentence.
¶ 33 Roach filed a personal restraint petition, asking the court to apply the equitable doctrine of credit for time spent at liberty, as articulated by the Ninth Circuit in United States v. Martinez, 837 F.2d 861 (9th Cir. 1988) (7 year delay in execution of a 4 year sentence due to clerical error), and Green v. Christiansen, 732 F.2d 1397 (9th Cir.1984) (prisoner erroneously released from state custody before serving concurrent federal sentence). Roach, 150 Wash.2d at 35, 74 P.3d 134.
¶ 34 Our Supreme Court accepted review of Roach's personal restraint petition and granted him equitable relief. The court agreed with the conclusion of federal and state courts that "fairness and equity" require the State to give a convicted person "credit against his sentence for time spent at liberty due to the State's mistake." Roach, 150 Wash.2d at 37, 74 P.3d 134.
¶ 35 Accordingly, the court held that "a convicted person is entitled to credit against his sentence for time spent erroneously at liberty due to the State's negligence, provided that the convicted person has not contributed to his release, has not absconded legal obligations while at liberty, and has had no further criminal convictions." Roach, 150 Wash.2d at 37, 74 P.3d 134.
¶ 36 The equitable doctrine of credit for time spent at liberty applies by analogy to this case. If equity entitles a convicted person to day-for-day credit for time spent at *266 liberty due to the State's mistake, equity should entitle him to credit for time spent in some lesser form of restraint than the punishment actually imposed. Thus, we hold that a convicted person is entitled to credit against his sentence for time spent in a statutorily noncompliant work release program due to the State's negligence, provided that the convicted person has not contributed to the error, has not absconded legal obligations while in the program, and has had no further criminal convictions.
¶ 37 The trial court erred when it denied equitable relief on the ground that "the Nisquallies" were at fault "for running them into the wrong program." RP at 53. Dalseg's and Cestnik's judgment and sentences specifically authorize them to serve their sentences in the Nisqually Tribal Jail work release program. This specific authorization cloaked the Nisqually Tribal Jail officials with apparent authority to execute the sentences. See State v. Bryant, 146 Wash.2d 90, 102, 42 P.3d 1278 (2002) ("Apparent authority exists where words or conduct by the principal are reasonably interpreted by a third party as conferring authority upon the agent.") (citing RESTATEMENT (THIRD) OF AGENCY, § 2.03 (2000)). Thus, the Nisqually corrections officers acted on behalf of the State when they enrolled Dalseg and Cestnik in a day reporting program rather than a statutorily-compliant work release program. Compare with Bryant, 146 Wash.2d at 102-03, 42 P.3d 1278 (Snohomish County not bound by an immunity agreement that refers only to King County and does not purport to bind the State as a whole). The error made by Nisqually corrections officers in interpreting and executing the judgment and sentences is attributable to the State.[4]
¶ 38 Further, the record shows that Dalseg and Cestnik did not contribute to the error. Before the sentencing hearing, defense counsel inquired whether the Nisqually work release program complied with the judgment and sentences and the State assured defense counsel that it did. Nothing indicates that Dalseg and Cestnik either misled the prosecutor about the Nisqually work release program or misled Nisqually Tribal Jail officials about the sentence terms. Also, nothing indicates that Dalseg and Cestnik enrolled in the Nisqually program in order to evade stricter work release requirements. On the contrary, they only enrolled in the Nisqually program after an attorney acting on their behalf attempted to enroll them in the Thurston County work release program, which turned them away for lack of space.
¶ 39 While in the Nisqually program, Dalseg and Cestnik fulfilled all the "work release" contract terms and conditions, including paying more than $7,000 to the Nisqually Tribal Jail, they remained employed, and they had no criminal convictions. Accordingly, Dalseg and Cestnik did not abscond any legal obligations.
¶ 40 Of the cases approvingly cited by the Supreme Court in Roach, we find Smith v. Swope, 91 F.2d 260 (9th Cir.1937), most instructive in our analysis. (150 Wash.2d at 33-36, 74 P.3d 134). In Swope, federal authorities failed to fully execute a warrant of commitment until five years after it was signed. A federal marshal had taken the convicted person into custody but then delivered him to state officials for unrelated criminal proceedings, failing to return him to federal custody. The Swope court held that the *267 sentence began to run when the federal marshal first assumed control over the prisoner, stating:
The least to which a prisoner is entitled is the execution of the sentence of the court to whose judgment he is duly subject. If a ministerial officer, such as a marshal, charged with the duty to execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner. The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody.
91 F.2d at 262.
¶ 41 Dalseg and Cestnik presented themselves to the Nisqually Tribal Jail promptly after sentencing in order to enroll in its work release program and begin serving their sentences. That Nisqually corrections officers, specifically authorized by the trial court to execute Dalseg's and Cestnik's sentences, enrolled them in a day reporting program rather than a program of partial confinement is not their fault. Both the prosecutor and the Nisqually corrections officers, acting on behalf of the State, led Dalseg and Cestnik to believe that they were fulfilling their sentences by complying with the day reporting program. Thus, their sentences began to run when they contracted with the Nisqually Tribal Jail and began serving their sentences in its day reporting program.
¶ 42 We hold that, on these facts, equity entitles Dalseg and Cestnik to day-for-day credit against their sentences for their time served in the Nisqually day reporting program.
¶ 43 Reversed and remanded.
We concur: ARMSTRONG and PENOYAR, JJ.
NOTES
[1] The standard sentencing range for both men was 0-12 months.
[2] SCOMIS is an acronym for "Superior Court Management Information System."
[3] RCW 9.94A.030 was amended in 2005. Laws of 2005, ch. 436, § 1. There are no substantive changes in the subsections quoted in this opinion, only renumbering. All citations to RCW 9.94A.030 are to the current version.
[4] We note that the prosecutor contributed to the error by stipulating that Dalseg's and Cestnik's enrollment in the Nisqually work release program complied with the judgment and sentences. But for the stipulation, at the May 2004 review hearing the court could have required Dalseg and Cestnik either to enroll in a work release program that satisfied the judgment and sentences or to begin serving their sentences in total confinement. Instead, the court accepted the State's stipulation. As a result, Dalseg and Cestnik reasonably believed that they fulfilled the terms of their judgment and sentences by complying with the Nisqually day reporting program.